# EXHIBIT 2



**CORPORATION SERVICE COMPANY**

S1C / ALL
**Transmittal Number: 11735485**
**Date Processed: 10/21/2013**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | WF East - WF Advisors<br>Corporation Service Company- Wilmington, DELAWARE<br>2711 Centerville Rd<br>Suite 400<br>Wilmington, DE 19808 |

| | |
|---|---|
| **Entity:** | Wells Fargo Advisors, LLC<br>Entity ID Number  1949082 |
| **Entity Served:** | Wells Fargo Advisors, LLC |
| **Title of Action:** | Kennison Wakefield vs. Wells Fargo & Company |
| **Document(s) Type:** | Amended Complaint/Petition |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Alameda County Superior Court, California |
| **Case/Reference No:** | RG13697146 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 10/21/2013 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | William I. Edlund<br>415-956-1900 |
| **Client Requested Information:** | Matter Management User Groups: [LITIGATION - EMPLOYEE] |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

# ENCLOSURE MEMO



BARTKO
ZANKEL
BUNZEL
BARTKO·ZANKEL·BUNZEL·MILLER

*A Professional Law Corporation*

One Embarcadero Center • Suite 800
San Francisco, CA 94111
main: 415.956.1900
fax: 415.956.1152
www.bzbm.com

**DATE:**  October 18, 2013                **FILE NO.:**          2437.000

**TO:**  Wells Fargo Advisors, LLC
c/o Agent for Service of Process
Corporation Service Company
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808

**FROM:**  Toby Emerson

**RE:**  *Kennison Wakefield v. Wells Fargo, et al.*

**ENCLOSED:**  First Amended Complaint for Damages and Declaratory and Injunctive
Relief

As you are the agent of service of process for Wells Fargo Advisors, LLC, I am serving you with
the enclosed First Amended Complaint filed in Alameda County Superior Court, Oakland, CA
October 18, 2013.

TE/te

William I. Edlund, State Bar No. 25013
Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
Sony B. Barari, State Bar No. 243379
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956--1900
Facsimile: (415) 956--1152

Attorneys for Plaintiff
KENNISON WAKEFIELD

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

UNLIMITED JURISDICTION—CLASS ACTION

| | |
|---|---|
| KENNISON WAKEFIELD, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO & COMPANY, WELLS FARGO ADVISORS, LLC, and WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, and DOES 1 through 20, <br><br> Defendants. | Case No. RG13697146 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF** |

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES DECLARATORY AND INJUNCTIVE RELIEF – Case # RG13697146

Plaintiff Kennison Wakefield, on behalf of himself and all others similarly situated, filed the Complaint against defendants Wells Fargo & Company, Wells Fargo Advisors, LLC, and Wells Fargo Advisors Financial Network, LLC, and files this First Amended Complaint to include Financial Advisors in North Dakota which has Competition Restraint Laws identical to California and to clarify all of his allegations consistent with the addition of the North Dakota Financial Advisors. Plaintiff alleges as follows:

## NATURE OF ACTION

This is a class action brought by California and North Dakota Financial Advisors (hereinafter, collectively, "FAs") formerly employed by an affiliate of California's largest bank and its predecessor corporations.   In clear violation of California and North Dakota law, defendants forfeited plaintiff's earned incentive compensation bonus accounts solely because plaintiff left the bank and went to work for a competitor in the financial services industry, and refused to sign a coercive release or turn over plaintiff's clients.  Defendants knew and know the incentive plan is designed to motivate Financial Advisors to generate more revenue for defendants. Defendants knew and know that the incentive plan was not subject to regulation under or preemption by the Employees Retirement Income Security Act of 1974, and camouflaged the plan by misrepresenting that it is a retirement plan and not subject to state laws.  Defendants continue to enforce illegal provisions in their incentive compensation plan, warranting declaratory and injunctive relief to stop these practices.  The alleged class is comprised of scores of defendants' former and current FAs employed in California and North Dakota who incurred actual, or face threatened, forfeitures of their accounts worth many millions of dollars.   Because defendants' conduct patently violates California's Business & Professions, Civil and Labor Codes, and North Dakota's Century Code, this action alleges defendants' acts were intentional and a known violation of the rights of FAs.  Punitive damages are warranted to deter such conduct in the financial services industry.  This action is brought by one named California Financial Advisor who is a representative plaintiff for the class, and represented by counsel highly experienced in redressing similar abuses by other banks.

## PARTIES

1.    Defendant Wells Fargo & Company is a financial services holding company, headquartered in San Francisco, California, and incorporated in Delaware, whose wholly owned subsidiaries include defendants Wells Fargo Advisors Financial Network LLC, and Wells Fargo Advisors, LLC (collectively, including their predecessor acquired corporations described below, "Wells Fargo"). Wells Fargo is a diversified, full-service firm engaged directly and through its subsidiaries in providing financial services and selling financial products.

2.    Wells Fargo is one of the largest public companies in the world. One in three households in the United States does business with Wells Fargo which has over 1.4 trillion dollars in assets, is ranked fourth in assets in the United States, and its 196 billion dollar market value was first in the United States among all financial services companies. Wells Fargo employs more than 265,000 persons, principally in the United States. Wells Fargo has over 9,000 stores in the United States with more stores in California than in any other state, including offices in Alameda County.

3.    Wells Fargo Advisors LLC and/or Wells Fargo Financial Network, LLC employs over 17,000 persons with over 15,000 as Financial Advisors, many of whom, including plaintiff, are or were employed in the states of California and North Dakota. It is the third largest retail brokerage provider in the United States. Wells Fargo Advisors Financial Network, LLC was formerly known as Wachovia Securities, LLC and as a result of the December 31, 2008 acquisition of Wachovia Corporation by Wells Fargo & Company, the name Wachovia Securities, LLC was changed to Wells Fargo Advisors, LLC which operates as a subsidiary of Wells Fargo Advisors Financial Network, LLC, formerly named Wachovia Securities Financial Holdings, LLC. Wachovia Corporation had previously acquired A.G. Edwards, Inc. in October 2007 and its principal subsidiary, A.G. Edwards & Sons, Inc. became a part of Wachovia Corporation in late 2008. Wells Fargo Advisors Financial Network, LLC and Wells Fargo Advisors, LLC do business under the trade name "Wells Fargo Advisors." Under that trade name, Wells Fargo Advisors has more than twenty five billion dollars in client assets and hundreds of office locations, many within Wells Fargo branches in the United States.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES DECLARATORY AND INJUNCTIVE RELIEF – Case # RG13697146

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    4.    Plaintiff is unaware of the true names and capacities of the defendants sued

2    as Does 1 through 20 and will amend this Complaint when that information becomes known.

3    Plaintiff is informed and believes and upon that basis alleges that at all relevant times each of the

4    defendants, including the Doe defendants, were employees, agents or representatives of Wells

5    Fargo and Wells Fargo Advisors engaging in the acts and conduct alleged in this Complaint, and

6    were acting in the course and scope of, and in furtherance of, such relationship. Plaintiff will refer

7    to all defendants collectively as "defendant" unless otherwise specifically alleged.

8    5.    Plaintiff   Kennison   Wakefield   ("Wakefield")   joined   a   predecessor

9    corporation ultimately acquired by Wells Fargo.  Wakefield was employed as an FA in the

10   Newport Beach office of Wells Fargo Advisors, LLC until August 2011, when he left at age 72.

11   He became employed by another financial services company shortly after he left Wells Fargo.

**GENERAL ALLEGATIONS**

12

13   6.    Wells Fargo has created and maintains an incentive plan as an integral part

14   of the compensation package paid to plaintiff, and all FAs, for their work at Wells Fargo or

15   predecessor corporations. The Wells Fargo plan covering employees of Wells Fargo Advisors is

16   presently called "The Wells Fargo Advisors, LLC, Performance Contributions and Deferral Plan,"

17   previously also called the Growth Plan and the Wells Fargo Advisors, LLC, Performance Award

18   Contribution Plan which was established by Wachovia Corporation and earlier by A.G. Edwards,

19   Inc. (hereinafter with all prior and subsequent iterations, the "Plan").  Plaintiff is informed and

20   believes that the 2011 iteration of the Plan is the Plan which covered FAs until at least 2012 and

21   that Wells Fargo continues to enforce the forfeiture provisions in the Plan. The 2011 iteration is

22   attached hereto as **Exhibit A.** Wachovia Corporation earlier established incentive plans that are

23   reflected in earlier iterations of this Plan and were called The Wachovia Securities 2009 Financial

24   Advisor Compensation Plan, Wells Fargo Advisors' 2010 Financial Advisor Compensation Plan

25   and Wachovia Securities Voluntary and Performance Award Contributions Plan, the A.G. Edwards

26   plans, and other names in prior years.

27

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-3-

7. The Plan is unilaterally imposed by Wells Fargo on FAs and may be amended at any time in any manner or suspended or terminated by the Wells Fargo Board of Directors or Human Resources Committee.

8. The Plan is designed to require FAs to continue their employment relationship with Wells Fargo and to preclude FAs from terminating employment with Wells Fargo and competing with Wells Fargo in the financial services industry. The Plan is also designed to prevent FAs from serving their clients with another financial services company and, instead, to retain those clients for Wells Fargo and to be served by other FAs who continue to be employed by Wells Fargo.

9. The compensation awarded to FAs under the Plan was a substantial amount of the total compensation earned by each FA, including plaintiff, and was provided to them as an incentive bonus to induce them to continue to work harder for Wells Fargo and increase their production by generating more revenue for Wells Fargo and for their own benefit, so long as they remained Wells Fargo employees.

10. Under the Plan, each FA, including plaintiff, earned compensation awards contingent upon the FA attaining Wells Fargo established performance objectives and the completion of service periods for incentive or special awards. The Plan does not permit an FA to make elective voluntary contributions.

11. Under the Plan, performance or special awards are made at the discretion of the Plan Administrator. Performance awards were to vest and become payable only if the FA continued employment with Wells Fargo for a designated term or were eligible for the "Rule of 60," the "Sunset Program" or other "retirement" provisions as alleged below. The awards in the Plan are credited each quarter to each FA in the FA's compensation account, including accrued appreciation and losses.

12. The Plan Administrator is hired by Wells Fargo & Company, is Wells Fargo's Director of Compensation and Benefits, and is officed in California. The Administrator may require one or more performance awards or special awards to be invested in a Wells Fargo common stock fund for such period as the Plan Administrator may specify, and no investment

-4-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   reallocations were permitted with respect to such sub-accounts until such period expired. The FA

2   does not own or have any rights to transfer any of the credited amounts in his or her compensation

3   account and is only a general, unsecured creditor as to Wells Fargo in any credited amounts in the

4   accounts.

5        13.    Distribution of incentive compensation under the Plan requires a qualified

6   FA to be at least 50 years old and have completed at least 3 years of service, provided age and

7   completed service add up to at least 60 years (the "Rule of 60"). In addition to having a combined

8   age and length of service of at least 60 years under the present Plan, qualified FAs must not

9   become associated with any financial services company for 3 years after leaving Wells Fargo and

10  must (a) execute and comply with Wells Fargo client transition agreements under one of the Wells

11  Fargo approved transition programs requiring the FA to transition clients to other Wells Fargo

12  Advisors FAs who will inherit the clients of the FA who leaves Wells Fargo (the "Sunset

13  Program"), or (b) sign and deliver to Wells Fargo a release of Wells Fargo and all affiliates in a

14  form and substance required by Wells Fargo.

15       14.    A fundamental tenet of the Plan purports to forfeit all amounts for awards or

16  special awards in a qualified FA's compensation account if he or she leaves Wells Fargo and

17  becomes employed by or affiliated in any way anywhere in the world with another financial

18  services firm or works in the financial services industry, during a three-year period commencing

19  on the date the FA leaves Wells Fargo.

20       15.    The Plan further provides that any termination of an FA (including a

21  qualified FA) due to conduct reasonably expected or suspected by Wells Fargo to have a material

22  adverse effect upon the financial interest or business reputation of Wells Fargo (which, plaintiff is

23  informed and believes, includes expected or suspected employment by a competing financial

24  services company or work in the financial services industry), forfeits all Plan incentive bonus

25  awards.

26

27

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## CLASS ACTION ALLEGATIONS

16.   <u>Class Members</u>. Plaintiff brings this action on his own behalf, and on behalf of a class of all present and former Wells Fargo, Wachovia Corporation and A.G. Edwards, Inc. FAs similarly situated. The class that plaintiff represents is comprised of:

a.      All those FAs employed by Wells Fargo, Wachovia Corporation or A.G. Edwards, Inc., or affiliates, in California or North Dakota who qualified (i) under the Rule of 60, or (ii) for retirement, or (iii) for early retirement and who left Wells Fargo or a predecessor corporation to work in the financial services industry or to compete in another financial services firm and did not sign a release or transition agreement, or (iv) who were terminated by Wells Fargo or a predecessor corporation because their employer suspected the FA would work for a competing financial services company, each of whom was entitled to receive incentive compensation account balances under the Plan but whose balances were unlawfully and wrongfully forfeited by Wells Fargo prior to the filing of this action; and

b.      All FAs presently employed by Wells Fargo in California or North Dakota whose account balances in the Plan or any other incentive or bonus plan are threatened with forfeiture if they became employed by another financial services company or work in the financial services industry, or do not sign a release of Wells Fargo.

17.   <u>Ascertainable Class</u>. The class is ascertainable in that all FAs who work or have worked for Wells Fargo or the above predecessor corporations in California or North Dakota may be identified and located using information contained in Wells Fargo personnel and payroll records.

18.   <u>Common Questions of Fact or Law</u>. There is a well-defined community of interest in the questions of law and fact common to members of the class which predominate over any individual questions. Defendants have acted similarly in a manner applicable to the members of the class. Among the questions of law and fact common to the class are:

a.      Whether the requirement in the Plan that any FA is disqualified from receiving any of the amounts in his or her compensation account from the Plan if the FA works for

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-6-

a competitor upon leaving employment, or does not leave the financial services industry and does not sign a Sunset Program transition agreement, or does not sign a release of Wells Fargo and all its subsidiaries, violates California Bus. & Prof. Code § 16600 or North Dakota Cent. Code § 9-08-06 (hereinafter, collectively, the "Competition Restraint Laws").

        b.     Whether Wells Fargo has enforced against FAs the restraint on competition in the Plan in violation of the Competition Restraint Laws.

        c.     Whether Wells Fargo has violated the Competition Restraint Laws by forfeiting the compensation account balances of FAs in the Plan.

        d.     Whether Wells Fargo has threatened, intimidated and coerced California Financial Advisors in violation of California Civil Code § 52.1 by knowingly including in the Plan a non-compete or anticompetitive restraint that is void under California Bus. & Prof. Code § 16600, and enforcing that restraint by forfeiting incentive compensation in the Plan and otherwise punishing Financial Advisors who leave Wells Fargo to associate with another financial services company or otherwise work in the financial services industry.

        e.     Whether the Plan is illegal because Wells Fargo has knowingly based the Plan on a non-compete or an anti-competitive restraint void and illegal under the Competition Restraint Laws.

        f.     Whether defendants have interfered with FAs' prospective economic advantage by threatening to forfeit or forfeiting earned compensation under the Plan when FAs have exercised their right to work elsewhere in the financial services industries or for a competitor of Wells Fargo.

        g.     Whether Wells Fargo has incorporated unconscionable forfeiture provisions in the Plan and illegally enforced those unconscionable Plan provisions against FAs who leave Wells Fargo.

        h.     Whether Wells Fargo's forfeiture of earned compensation of California Financial Advisors under the Plan violates Labor Code § 206.5 by requiring those Financial Advisors to execute a release at the time they left employment with Wells Fargo.

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-7-

19.     Typicality and Adequacy. The claims of the plaintiff are typical of those of the class, and the plaintiff will fairly and adequately represent the interests of the class.

20.     Numerosity. There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff class in that the members of the class are so numerous that joinder of all of them is impractical. Class members may be easily notified of the pendency of this class action by mail, website or other reasonable means.

21.     Superiority. Plaintiff knows of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action. Relief concerning the plaintiff's rights under the laws alleged and with respect to the class is appropriate.

22.     Injunctive Relief. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class would enable defendants to continue their wrongful, willful and defiant violations of (a) the fundamental public policy reflected in the Competition Restraint Laws which prohibit forfeitures and other restraints on an employee's exercise of the right to engage in the profession or business of his choice, (b) Civil Code § 52.1 which prohibits interference or attempted interference with such statutory rights of California Financial Advisors by threats, intimidation, or coercion, (c) Labor Code § 206.5, (d) Civil Code §§ 1709 and 3243, and (e) other laws.

23.     Individual Complaints Not Possible. The likelihood of individual class members prosecuting separate claims is remote by reasons of their ignorance of their rights, defendants' fraudulent misrepresentations to them, and concealments from them of their rights, and defendants' threats, intimidations, coercion and other related conduct.

24.     Plaintiff Will Protect Class. Plaintiff will fully and adequately protect the interests of the class members, has retained class counsel who are experienced and competent in class actions and in complex litigation, and do not have interests which are contrary to or in conflict with those of the class, all of whom have suffered or are suffering or will suffer the same legal wrongs as a result of the defendants' misconduct.

2437.000/754120.1

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES DECLARATORY AND INJUNCTIVE RELIEF – Case # RG13697146

## THE REPRESENTATIVE PLAINTIFF

25.     Plaintiff is a citizen of the State of California and was formerly employed by Wells Fargo and predecessor corporations in California. He had earned substantial compensation under the Plan and qualified for payment under the Plan. He had a compensation account balance greater than $50,000, and his compensation account balance was forfeited by Wells Fargo in violation of the Competition Restraint Laws.

26.     On information and belief, there are at least 75 other FAs who qualified under the Rule of 60 or have retired or early retired, and/or who have left Wells Fargo or a predecessor corporation to associate with another financial services company and have not been paid their credited compensation account balances in the Plan and whose compensation account balances have been unlawfully forfeited by Wells Fargo or a predecessor corporation.

## VENUE

27.     Venue is proper in Alameda County because defendant Wells Fargo & Company has over 50 offices in this county and regularly conducts business in this county, and owns and controls Wells Fargo Advisors. Wells Fargo Advisors has FAs working in the county, and regularly conducts business in this county and in the State of California. The contract breach has occurred and future breaches will occur in this county as well as throughout the State of California.

## ILLEGALITY OF THE PLAN

28.     FAs employed by Wells Fargo advise individual, partnership and corporate clients in the management of their investments and earn production commissions as a result of their work with such clients. The production commissions earned by FAs are part of the Wells Fargo compensation structure and are the wages earned by the FA. Wages are paid in parts:

a.     One part of those wages is paid in cash to the FA generating commissions on a current basis; and

b.     The other part of those wages is incentive compensation, which Wells Fargo withholds and is paid to FAs as incentives in accordance with the terms of the Plan. It

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-9-

provides for crediting the FA's compensation account with performance awards and special awards which the FA may select one or more of certain identified investment accounts as the measure of the investment returns. At present, these selections are certificates of deposit, or any one or more of 10 Dow Jones Funds, or several other funds. Records of the compensation are kept by Wells Fargo and made available to FAs for review and verification. Compensation awards are made immediately following the year in which the work has been done. Wells Fargo maintains a compensation account balance for each FA, brought up to date at least at the end of each Plan year, reflecting the value of the award compensation for each California FA. Awards are paid in a lump sum in accordance with vesting schedules set by Wells Fargo, or, pursuant to detailed Plan requirements, deferred payment.

29.    Payment Provisions of the Plan include:

a.    Account Balance.    Upon the death or disability of an FA, the compensation account balance is paid in a lump sum to the estate, or the designated beneficiary, or an authorized personal representative.

b.    Non-compete.    The Plan provides that the payments will not be made or will cease to be made and will be forfeited to Wells Fargo if a qualified FA, after retirement, early retirement, or leaving employment, competes with Wells Fargo or its affiliates or predecessor corporations anywhere in the world within the scheduled payout period. Any paid funds are recaptured by Wells Fargo if such competition occurs during the period of payment after retirement, early retirement, or leaving Wells Fargo.

c.    Plan Purpose.    Compensation under the Plan is designed to ensure the FA's continued service and encourage the FA to contribute to Wells Fargo's long-term growth and financial success. A vesting schedule is set by the Plan Administrator not later than 90 days after the Plan year by a cliff vesting formula or an installment vesting formula. The performance awards and special awards may have different vesting schedules to be set at the discretion of the Plan Administrator. The FA is qualified to retire when he or she is at least 50 years old, has completed at least 3 years of continued service as an employee, and has combined age and length of continuous service as an employee of at least 60 years (Rule of 60). Amounts credited to the

-10-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  compensation account of those employees are subject to forfeiture if the FA becomes associated

2  with any other financial service business for a period of 3 years after retirement.

3         30.    Wells Fargo receives, on a current basis, that part of each FA's production

4  commissions not paid to the FA, and also derives additional income from the assets of clients to

5  whom FAs provided advice and service.  On a current basis, Wells Fargo takes about 60-65% or

6  more of the commissions earned by FAs, pays FAs 30-38% or less of said commissions as current

7  wages, and defers payment of other wages earned by FAs in accordance with the terms of the Plan.

8         31.    The forfeiture provisions referred to above were and are void and unlawful

9  under the Competition Restraint Laws first enacted in the California Civil Code of 1872 and in the

10  Dakota Territory Civil Code in 1865.

11         32.    The Plan is, and always has been, an incentive plan, unilaterally imposed on

12  its FAs, is an adhesive contract unconscionable under California law and other State laws and is

13  not subject to the Employee Retirement Income Security Act of 1974 ("ERISA") because it is

14  designed to be and is an incentive plan and not an employee pension benefit plan under or subject

15  to the Act.

16         33.    Plaintiff's rights under the Competition Restraint Laws are unwaivable

17  statutory rights, which express the fundamental public policy of the states of California and North

18  Dakota and which cannot be evaded by a "choice of law" clause in any contract, or other

19  provisions unilaterally imposed in an adhesive contract.   The California Supreme Court has

20  consistently held for over 100 years that forfeitures for joining a competitor are void and unlawful

21  and the North Dakota courts found the California decisions to be persuasive and follow those

22  decisions.

23         34.    At all material times, defendants:

24           a.    Had actual knowledge of the Competition Restraint Laws;

25           b.    Had known that *Mugill v. Rueben H. Donnelly Corp.* (1965) 62

26  Cal.2d 239, *Frame v. Merrill Lynch, Pierce, Fenner & Smith* (1971) 20 Cal.App.3d 668, *Ware v.*

27  *Merrill Lynch. Pierce, Fenner & Smith* (1972) 24 Cal.App.3d 35, affirmed *sub nom, Merrill*

28  *Lynch, Pierce, Fenner & Smith, Inc. v. Ware* (1973) 414 U.S. 117, and *Edwards v. Arthur*

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-11-

1  *Anderson LLP* (2008) 44 Cal.4th 937, and many other cases, had rejected attempts by financial

2  services and other companies to evade the Competition Restraint Laws by various legal vehicles

3  including attempting to offer a choice of law clause such as naming North Carolina law without

4  reference to North Carolina's conflicts-of-law provision; and

5          c.     Had been informed, on information and belief, by its "in-house" and

6  retained counsel that it had long been settled that forfeitures for competing with an employer after

7  leaving that employer were unlawful and void under the Competition Restraint Laws.

8          35.    Defendants' violations of the Competition Restraint Laws were

9  premeditated, willful and deliberate.

10  **PLAN ANNOUNCEMENTS AND OTHER COERCIVE COMMUNICATIONS**

11          36.    Defendants periodically and at least once a year distributed to FAs and

12  Financial Advisors in other states an announcement about Wells Fargo's "Financial Advisor

13  Compensation Plan" which identified the Plan to provide incentives to increase the income of

14  Wells Fargo Advisors, LLC and pay the FAs' share of that income in the form of incentive bonus

15  compensation, a record of which would be kept in an open book account balance under the Plan.

16          37.    Those incentives were accompanied by restraints, deterrents, interferences,

17  threats, intimidations and economic coercion, to the effect that no matter how hard the FAs

18  worked, or how much Wells Fargo benefitted from their work, all of the money and balances in

19  their compensation accounts would be forfeited to Wells Fargo if they exercised their freedom to

20  exercise their profession and business by leaving Wells Fargo and pursuing their economic

21  advantage in going to work for a competitor of Wells Fargo or its affiliates or predecessor

22  corporations anywhere in the world without signing and delivering an agreement to a Sunset

23  Program and never revoking that agreement, or signing a release in a form and substance dictated

24  by Wells Fargo.

25          38.    Wells Fargo's threats, intimidations and coercion were intended to and did

26  interfere with the prospective economic advantages of its FAs by restraining and deterring them

27  from the free exercise of their lawful profession and business in deciding whether or when to leave

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-12-

1    to take other employment in the financial services industry, or with a competitor anywhere in the

2    world. If and when an FA did leave his or her employment and compete in the financial services

3    industry or became employed by a competitor, the forfeitures were automatically imposed by

4    Wells Fargo or a predecessor corporation and continued year after year during the entire payout

5    period of the FA's compensation.

6           39.    California Civil Code § 52.1(b) provides that "Any individual whose

7    exercise or enjoyment of rights secured by . . . laws of this state, has been interfered with, as

8    described in subdivision (a), may institute and prosecute in his or her name and on his or her

9    behalf a civil action for damages, including, but not limited to, damages under Section 52,

10   injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or

11   enjoyment of the right or rights secured." Subdivision (a) applies to "a person or persons, whether

12   or not acting under color of law, [who] interferes by threats, intimidation, or coercion, or attempts

13   to interfere by threats, intimidation or coercion" with the exercise or enjoyment of rights secured

14   by laws of California.

15          40.    Defendants and their Manager/Directors at various offices in California and

16   elsewhere derive a substantial portion of their compensation from the production commissions

17   earned by the FAs working under their supervision and control, and from other benefits flowing

18   from Wells Fargo's use of the assets of clients served by those FAs.

19          41.    At all material times, defendants and their Manager/Directors knew or

20   should have known that the forfeiture for competition provisions in the Plan were unlawful and

21   void under the Competition Restraint Laws.

22          42.    Wells Fargo and its Manager/Directors threatened, intimidated and coerced

23   plaintiff and the other FAs, fraudulently concealed from plaintiff and all FAs their knowledge that

24   the forfeiture for competition provisions of the Plan was void and unlawful, and fraudulently

25   obtained an advantage for Wells Fargo's profit by means of their exploitation of their knowledge

26   and the FAs' ignorance of the unlawful and deceitful character of the threats, intimidations and

27   coercions of forfeiture in the Plan and programs and statements about those Plans to deter and

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-13-

1   restrain FAs from exercising their right to leave Wells Fargo and compete elsewhere in the

2   financial services industry.

3          43.   At all material times, defendants and their Manager/Directors knew that:

4          a.   FAs employed by Wells Fargo who wished to leave Wells Fargo

5   were in high demand by Wells Fargo's competitors;

6          b.   Wells Fargo forfeited the compensation awards of qualified FAs

7   who left Wells Fargo to work for a competitor or otherwise work in the financial services industry;

8          c.   Wells Fargo was intentionally concealing from FAs the fact that they

9   knew or should have known the forfeitures in the Plans were illegal restraints and were void under

10  the Competition Restraint Laws;

11         d.   The purpose of the threats, intimidations, and coercions of

12  forfeitures and the actual forfeitures was to restrain and deter FAs from exercising their statutory

13  protected freedom to exercise their profession and business and to pursue their prospective

14  economic advantages as they chose by competing with Wells Fargo;

15         e.   Wells Fargo's Plan Administrator has never determined or

16  communicated to plaintiff that the forfeiture of FAs' financial awards and special awards is void

17  and illegal;

18         f.   The Plan erroneously and falsely purports to be designed for a

19  "select group of management or highly compensated employees" of Wells Fargo Advisors, LLC,

20  and not subject to ERISA; and

21         g.   The Plan purports to require any FA who has been denied benefits to

22  be limited to a civil action under ERISA.

23         44.   As an integral part of Wells Fargo's forfeiture schemes, the Plan contains

24  provisions which are solely for the benefit of and advantage to Wells Fargo and which purport to

25  require FAs to:

26         a.   Sign a release or surrender his or her rights to continue to serve their

27  clients if the FA leaves Wells Fargo;

28         b.   Bring any claim regarding their rights before the Plan Administrator;

-14-

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES DECLARATORY
AND INJUNCTIVE RELIEF – Case # RG13697146

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

c.      Submit to a Plan Administrator appointed by Wells Fargo who makes a final, binding and conclusive decision about the forfeiture of the FA's compensation account and all amounts owed to the FA;

d.      Be bound by the Plan Administrator's decision;

e.      Apply only North Carolina law; and

f.      Be subject to ERISA enforcement provisions.

45.    Wells Fargo's conduct and requirements:

a.      Deprived and continue to deprive FAs of a prompt, efficient and permanent vindication of their statutory rights to be free of unlawful forfeitures and threats, intimidations and coercions of forfeiture of their wages and surrender their rights to compete and continue to serve their clients or release Wells Fargo from its violations of law if they leave Wells Fargo;

b.      Were and are a systematic effort to confine FAs to a review procedure that works only to the advantage of Wells Fargo by threatening them as individuals with facing and seeking to overcome the legal and financial resources of Wells Fargo if they should challenge the forfeitures;

c.      Threatens and continues to threaten, intimidate, and coerce FAs with the forfeiture provisions after any and all reviews by the Plan Administrator;

d.      Were part of a fundamental fraudulent scheme imposed by adhesive contracts to restrain FAs and Financial Advisors in other states for years after leaving Wells Fargo from working for themselves or a competitor, by falsely inducing them to believe that the forfeiture provisions were lawful and enforceable by Wells Fargo, all the while knowing that:

i.      They were unlawful and unenforceable under the Competition Restraint Laws, and, therefore, void and not part of the Plan;

ii.     Compensation accounts of qualified FAs were payable immediately and automatically, with no lawful reason to require review by the Plan Administrator of the compensation accounts of the FAs that were forfeited;

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-15-

iii.     The Plan forfeiture provisions were a device to decrease and delay payment of the wages FAs had earned at Wells Fargo in order to restrain them from competing with Wells Fargo;

iv.     The Plan was not an employee benefit retirement plan subject to ERISA or any of the ERISA provisions;

v.     The Plan was not exempt from ERISA by purportedly covering only a select group of management or highly compensated employees; and

vi.     The requirement that a California FA execute a release was null and void and constituted a misdemeanor.

46.     Defendants' conduct in their threats, intimidation, coercion and enforcement of the forfeiture provisions in the Plan:

a.     Is unconscionable and oppressive under California Civil Code § 1670.5;

b.     Is in violation of California Civil Code § 1668 and Labor Code § 206.5 in having as its object, directly and indirectly, to delay and avoid the payment of compensation account balances and the forced release of Wells Fargo from responsibility for its own fraud, willful injury to the property of its California FAs, and willful violation of the Competition Restraint Laws; and

c.     Is intended to prevent a situation in which Financial Advisors in other states, upon learning that such forfeitures were void and illegal in California and North Dakota, would demand that such forfeitures cease to be enforced against them, either because such forfeitures might be unlawful under their state laws, or because they should be treated in the same way as their counterpart FAs, or for both such reasons.

47.     All otherwise applicable statutes of limitation did not commence to run until the FAs became aware that defendants' forfeitures of their Plan awards were void and unlawful.

48.     Any otherwise applicable statute of limitations did not commence to run until four years after the date that the last item of compensation account balance should have been

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   delivered by Wells Fargo or a predecessor corporation to each FA who earned a compensation

2   award under the Plan since the Plan was created.

3                    **FIRST CAUSE OF ACTION**
     **(Violation of California Business & Professions Code § 16600 and**
4                    **North Dakota Century Code § 9-08-06)**

5        49.    Plaintiff incorporates paragraphs 1 through 48.

6        50.    All clauses in the Plan forfeiting incentive compensation account balances

7   and other rights of FAs, if they should compete with Wells Fargo or a Wells Fargo affiliate or

8   work in the financial services industry, have been and are unlawful and void under the

9   Competition Restraint Laws.

10       51.    All forfeitures made by Wells Fargo of compensation account balances of

11  FAs in the Plan because the FA competed with or announced that he or she might compete with a

12  competitor of Wells Fargo or a Wells Fargo affiliate or otherwise work in the financial services

13  industry were and are void and unlawful.

14       52.    The following Wells Fargo statements to plaintiff and conduct regarding the

15  Plan, its Annual Advisory brochures to FAs, and related communications by defendants to plaintiff

16  were and are unlawful:

17       a.     Threatening forfeiture of incentive compensation account balances

18  of FAs in the Plan if they joined a competitor;

19       b.     Concealment from its FAs that such forfeitures were forbidden and

20  unlawful under the Competition Restraint Laws;

21       c.     Execution of such forfeitures knowing that they were unlawful;

22       d.     Coercive and deceitful demands for a release to attempt to protect

23  Wells Fargo; and

24       e.     The acts of Wells Fargo alleged above were intended to keep FAs

25  ignorant of the unlawfulness of its acts and constituted threats, inducements and economic

26  coercion which attempted to and did interfere with the fundamental statutory rights of FAs to

27  exercise their profession or business as they chose

28

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES DECLARATORY
AND INJUNCTIVE RELIEF – Case # RG13697146

2437.000/754120.1

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

53.    Wells Fargo should be permanently enjoined from interfering or attempting to interfere with the exercise by FAs employed by Wells Fargo of their right to seek prospective business advantages or employment by persons other than Wells Fargo or to quit Wells Fargo and compete with, or become employed by, a firm that competes with Wells Fargo or a Wells Fargo affiliate by forfeiting or threatening to forfeit in any way payment of the proceeds in the compensation account balances of the FAs.

54.    Wells Fargo and each of its Manager/Directors should be specifically compelled immediately and annually to advise each FA clearly and in writing that the Competition Restraint Laws forbid any restraint by forfeiture or otherwise of an employee's right to quit Wells Fargo and join a competitor or work in the financial services industry, and to encourage the clients served by the FA to continue to be served by the FA.

55.    Wherefore, plaintiff prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
**(Violation of California Civil Code § 52.1 as to California Financial Advisors)**

56.    Plaintiff incorporates paragraphs 1 through 55.

57.    Defendants' conduct was wrongful under Civil Code § 52.1 because it interfered by threats, intimidation and coercion, or attempted to interfere by threats, intimidation or coercion with the exercise or enjoyment by California Financial Advisors of their rights under Bus. & Prof Code § 16600.

58.    Defendants' conduct interfered with or attempted to interfere with California FAs' exercise or enjoyment of their rights secured under Labor Code § 206.5 and by other statutory and common laws of the State of California.

59.    Wherefore plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Violation of California Labor Code § 206.5 as to California Financial Advisors)**

60.    Plaintiff incorporates paragraphs 1 through 59.

61.    Defendants' conduct was wrongful because it required FAs to execute a release of a claim or a right on account of compensation due or to become due. Any such release required by defendants is null and void and a misdemeanor under California law.

-18-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

62.     Defendants' conduct in requiring a release in substance and form demanded by Wells Fargo, violates Labor Code § 206.5, and has caused injury to plaintiff and all California Financial Advisors.

63.     Defendants are liable for compensatory damages, penalties, injunctive and declaratory relief, and reasonable attorneys' fees.

64.     Wherefore, plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
#### (Interference with Prospective Economic Advantage)

65.     Plaintiff incorporates paragraphs 1 through 64.

66.     The Plan was designed, executed and administered by defendants and their Manager/Directors for the purpose of interfering with, restraining and deterring plaintiff's substantially certain prospective economic advantage in taking employment with one of the many firms competing with Wells Fargo that were constantly seeking to hire them, and to preclude plaintiff and other FAs from continuing to serve clients by imposing substantial and continuing forfeitures of their earned wages over many years in the future if they did compete with Wells Fargo.

67.     Defendants' conduct was wrongful under the Competition Restraint Laws, as a wrongful act for the purposes of plaintiff's claim for interference with prospective economic advantage, fraudulent and illegal as threats, intimidation and economic coercion interfering with statutory rights.

68.     Defendants' conduct was intended to and did disrupt relationships their former FAs, including plaintiff, attempted to achieve by associating with others and working in the financial services business and causing those FAs economic harm.

69.     Defendants' conduct was intended to and did cause those FAs, including plaintiff severe emotional harm and, had those FAs known that the forfeitures and restraints were unlawful and void, would have left Wells Fargo earlier to associate with other financial services companies or work in the financial services industry.

70.     Wherefore, plaintiff prays for relief as hereinafter set forth.

-19-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**FIFTH CAUSE OF ACTION**
**(Book Account)**

71.   Plaintiff incorporates paragraphs 1 through 70.

72.   The relationship between Wells Fargo and its FAs, including plaintiff, under the Plan was that of a debtor (Wells Fargo) and creditor (the FAs).

73.   The compensation account balances of plaintiff and other FAs were a book account and the statute of limitations does not commence to run until the last payment on such an account is due.

74.   The last payment of plaintiff's and class members' compensation account balances would be due when the last payment under the Plan awards included in their compensation account balances was due and payable.

75.   Wells Fargo is liable to pay over to plaintiff and all qualified FAs, whose compensation account balances under the Plan were forfeited for their having joined a competitor or worked in the financial service industry, the full value of all such account balances plus interest at the statutory rate of 10% from the time each payment was due.

76.   Said account balances include all of those forfeited from the commencement of the earliest of the predecessors to the Plan to the present day.

77.   Wherefore, plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Constructive Trust)**

78.   Plaintiff incorporates paragraphs 1 through 77.

79.   By its forfeitures, Wells Fargo wrongfully detained the property of plaintiff and other FAs in violation of the Competition Restraint Laws, and by fraud and wrongful acts, and by reason thereof Wells Fargo is a constructive trustee for plaintiff's and each of the FA's benefit of the account balances under the Plan of all property formerly held in their names.

80.   Wells Fargo held plaintiffs' and other class members' property in the Plan, together with interest and profits on them, in constructive trust for its FAs, whose account balances it illegally forfeited.

-20-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

81. Plaintiff and members of the class were ignorant of the fact that Wells Fargo had misrepresented to them that the adhesive contractual Plan under which it obtained their labor gave it the right to forfeit the incentive bonus compensation they earned, if they should leave and compete with, or join with a competitor who competed with Wells Fargo, had concealed from them the fact that any such forfeiture was void, unlawful and ineffectual, and taken steps to prevent disclosures of such information, and all the while Wells Fargo knew that under the Competition Restraint Laws, the Plan had to be read as though such forfeitures and restrictive provisions did not exist.

82. By reason of the facts referred to in paragraphs 1 through 70, the cause of action for constructive trust did not arise until 2013.

83. Wherefore, plaintiff prays for relief as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**(Fraud)**

84. Plaintiff incorporates paragraphs 1 through 83.

85. Defendants misrepresented to plaintiff that the Plan contained lawful forfeiture clauses permitting Wells Fargo to forfeit to itself the account balances of the FAs if they joined a competitor and gave up their clients to other Wells Fargo Financial Advisors or release Wells Fargo for all of its illegal conduct, even though it knew that under the Competition Restraint Laws such clauses were void and unlawful and had to be read out of those Plans.

86. Knowing that the forfeiture clauses of the Plan were void, unlawful, and not a part of those adhesive contracts, Wells Fargo obtained the services of its FAs by representing to them that it would pay them their account balances once they qualified under the terms of those Plans, fraudulently concealed from and did not disclose to them the material fact that those forfeiture conditions were unlawful, and fraudulently forfeited their compensation account balances, which Wells Fargo must restore to them at their value at the time of forfeiture plus interest or such earlier time they would have left Wells Fargo if they had known that the forfeiture and related Plan provisions were illegal and void.

-21-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

87.     Plaintiff was ignorant of the true facts, relied to his detriment on the representations and non-disclosures of Wells Fargo, and was injured as a consequence thereof.

88.     Wherefore, plaintiff prays for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
### (Breach of Contract)

89.     Plaintiff incorporates paragraphs 1 through 88.

90.     Wells Fargo Advisors, LLC contracted with plaintiff to pay him incentive compensation, as described in the Plan and related written statements by Wells Fargo.

91.     Under the Competition Restraint Laws, all provisions in the Plan forfeiting FAs account balances for competing with Wells Fargo after leaving Wells Fargo are void and, to that extent, the Plan must be read as if those void provisions were not in the Plan.

92.     Plaintiff has performed all of his legally required obligations.

93.     The only reasons that such payments have not been made to plaintiff and other class members are void Plan provisions. Accordingly, defendants' failure and refusal to pay earned compensation to qualified FAs constitute a breach of defendants' obligations.

94.     Defendants are liable to plaintiff and all class members for breach of contract for the amounts due in each year to them on their compensation account balances, together with interest at the rate of 10% per year on each such award from the date that it first became payable until actual payment of each such forfeited amount.

95.     Wherefore, plaintiff prays for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION
### (Conversion)

96.     Plaintiff incorporates paragraphs 1 through 95.

97.     Wells Fargo converted the compensation account balances of plaintiff and all class members at the time it forfeited them and is liable to them in the amount of the value of the account balances at the time of the conversions, with interest from that time and a fair compensation for the time and money properly expended to recover those account balances.

98.     Wherefore, plaintiff prays for relief as follows.

-22-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## PRAYER

Plaintiff requests the following:

1. Certification of the case as a Class Action on behalf of the pleaded class.

2. Designation of representative plaintiff Wakefield as Class Representative.

3. Designation of plaintiff's counsel as Class Counsel.

4. The full value of plaintiff's and class members' compensation account balances under the Plan for each qualified FA whose account was forfeited from the commencement of the creation of the Plan forward, because the FA became or was suspected of becoming otherwise employed in the financial services industry or with a competitor of Wells Fargo, together with interest at the rate of 10% per annum from the time of said forfeiture.

5. Compensation equal to plaintiff's and class members' value of their account balances on the dates they would have left Wells Fargo if they knew that Plan forfeiture was illegal and void, and no later than the dates Wells Fargo forfeited their account balances at the highest value from those dates until judgment, plus interest to the date of judgment.

6. Damages for emotional distress in a sum to be determined according to proof.

7. An accounting.

8. A declaration that the Plan's non-compete provision is illegal under the Competition Restraint Laws, and an injunction barring defendants from enforcing the same, and requiring full and adequate notice to FAs that the provision is not enforced.

9. For a constructive trust with respect to plaintiff's and class members' property in the funds under the Plan, together with interest and profits on them, and for attorneys' fees.

10. Restitution and interest.

11. Punitive damages on each of the causes of action permitting such damages.

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-23-

1                  12.     Reasonable attorneys' fees.

2    DATED:  October 17, 2013

3                              BARTKO, ZANKEL, BUNZEL & MILLER
                               A Professional Law Corporation

5                    By: _____

6                                 William Edlund
                               Attorneys for Plaintiff
                               KENNISON WAKEFIELD

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-24-

# Exhibit A

# WELLS FARGO ADVISORS, LLC PERFORMANCE AWARD CONTRIBUTION AND DEFERRAL PLAN

---

PLAN SUMMARY AND PROSPECTUS

PERFORMANCE/SPECIAL AWARD AND EXTENDED DEFERRAL ELECTION PROGRAM

---

The date of this Plan Summary and Prospectus is April 15, 2011.

## TABLE OF CONTENTS

| | Page |
|---|---|
| Introduction | 1 |
| Administration | 1 |
| Eligibility | 2 |
| Plan Concepts | 2 |
| Participation | 4 |
| Performance Awards | 5 |
| Special Awards | 5 |
| Extended Deferral Elections | 6 |
| Changes in Status | 7 |
| Vesting | 8 |
| Investment Return | 10 |
| Distribution of Benefits | 11 |
| General Creditor Status | 15 |
| Risks of Plan Participation | 15 |
| Federal Tax Consequences | 16 |
| Miscellaneous | 17 |
| Benefit Claims | 19 |
| AVAILABLE INFORMATION | 20 |
| INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE | 20 |
| APPENDIX I | |
| APPENDIX II | |

**THIS DOCUMENT CONSTITUTES PART OF A PROSPECTUS COVERING SECURITIES
THAT HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933.**

**INFORMATION CONCERNING
THE WELLS FARGO ADVISORS, LLC PERFORMANCE CONTRIBUTION AND DEFERRAL PLAN**

Wells Fargo & Company ("Wells Fargo") maintains the Wells Fargo Advisors, LLC Performance Award Contribution and Deferral Plan, as amended (the "Plan") to provide a select group of management personnel and other highly compensated employees of Wells Fargo Advisors, LLC (the "Company") and other participating employers with the opportunity to defer a portion of their incentive-based compensation each year, and with the opportunity to earn additional incentive compensation contingent upon their attainment of pre-established performance objectives and their completion of designated service periods. One or more such individuals may also be credited with special awards under the Plan designed to serve as a meaningful incentive for them to continue in the employ of their participating employers. Such plan accounts will, however, be subject to vesting schedules tied to the completion of designated periods of service and/or pre-established performance objectives. Participants will also have the opportunity to earn an investment return on their account balances during the vesting and deferral period.

The purpose of this document is to provide you with a summary of the principal provisions governing your participation in the Plan. This summary is not intended to be complete and is qualified in its entirety by reference to the Plan. You may contact Executive Compensation, 301 South Tryon Street, T-11, NC-0951, Charlotte, North Carolina 28288, 1-888-383-2203, to obtain a copy of the Plan and additional information about the Plan and its administration (including the plan administrators).

### Introduction

Under the Plan, one or more individuals may be credited with performance awards contingent upon the individual's attainment of pre-established performance objectives and their completion of designated service periods or special awards designed to serve as a meaningful incentive for the participant to continue in the employ of the participant's participating employer. Participants will have the opportunity to earn an investment return on any performance/special awards through investment elections which mirror the actual return on a select group of investment alternatives.

This plan summary is intended to serve as part of a prospectus for the Plan and will provide you with information concerning the principal features of the extended deferral election program. Additional information may be found in the Plan document and the applicable supplemental plan summary in the form of a question and answer overview for the particular type of award received or deferral election offered under the Plan (the "Supplemental Summary") accessed through the Teamworks site on the Intranet (*http://portal.teamworks.wellsfargo.com/Pages/Default.aspx*), under "Deferred Compensation" in the "Manager Center" section.

### Administration

The Plan will be administered by the plan administrator.

The plan administrator or its delegate will have the exclusive authority and responsibility for all matters in connection with the operation and administration of the Plan. The plan administrator's powers and duties shall include, but shall not be limited to, the following: (a) responsibility for the compilation and maintenance of all records necessary in connection with the Plan; (b) discretionary authority to interpret the terms of the Plan; (c) authorizing the payment of all benefits and expenses of the Plan as they become payable under the Plan; (d) authority to engage such legal, accounting and other professional services as it may deem necessary; (e) authority to adopt rules and procedures for implementing the Plan; (f) discretionary authority to determine participants' eligibility for benefits under the Plan; (g) set limits on the percentage or amounts that may be subject to a rollover election in a plan year; and (h) to resolve all issues of fact and law in connection with such determinations. The decision of the plan administrator on any matter affecting the Plan or the rights and obligations arising under the Plan shall be final and binding upon all persons.

Although the plan administrator will perform a number of functions under the Plan and will, either itself or through its designate, make all administrative determinations required under the Plan, the plan administrator will not have any trustee responsibilities or act in any trustee capacity.

## Eligibility

You will be eligible for selection as a participant in the Plan for a particular plan year if you are an employee in a job classification which the plan administrator has determined to be eligible for participation in the Plan; and are a highly compensated employee or management personnel for a participating employer, as determined by the plan administrator in its sole discretion.

However, you will *not* be eligible to participate if you are not resident in the United States, if you are classified as an independent contractor or consultant or as a temporary employee, or if your business unit has designated you as ineligible by reason of your participation in one or more other performance award contribution programs sponsored by Wells Fargo or any other affiliated company.

At present, it is anticipated that the Company will be the only affiliated company of Wells Fargo which will make the Plan available to eligible employees.

## Plan Concepts

The following plan concepts are important to your understanding of the terms, restrictions and limitations which will govern awards made and/or deferred under the Plan and the plan accounts to which those awards will be credited.

*affiliated company*: any entity other than the Company that is part of a "single employer" within the meaning of subsection (b) or (c) of the Internal Revenue Code §414 that includes the Company; subject, however, to such aggregation rules as may be provided in applicable guidance under Internal Revenue Code §409A.

*client transition agreement*: an agreement (in form and substance specified by the participating employer) pursuant to which a retiring participant transitions his or her client accounts to one or more other employees and is to receive compensatory payments based on the fees or commissions subsequently generated by those accounts.

*CD option*: an earnings option based on a certificate of deposit in such denomination and for such duration as is determined from time to time by the Plan Administrator.

*disability*: any injury, illness or sickness incurred by a participant which qualifies him or her for disability benefits under a Long-Term Disability Plan (or successor thereto) maintained by Wells Fargo, as in effect from time to time (the "LTD Plan").

*employee*: any person in the employ of Wells Fargo (or any affiliated company) who is subject to the control and direction of the employer entity as to both the work to be performed and the manner and method of performance.

*extended deferral election*: a participant's election made in accordance with the terms of the Plan to defer the distribution of his or her performance award subaccount or special award subaccount for an additional period of at least five (5) years measured from the date on which that particular subaccount was scheduled to first become due and payable under the Plan.

*involuntary termination*: termination of employee status due to (i) the employee's discharge or dismissal by the participating employer for any reason other than a termination for cause; or (ii) the employee's death. Involuntary termination shall not include any resignation initiated by a participant for any reason whatsoever, even if it results from changes in working conditions.

*participating employer*: the Company and any other affiliated company which has adopted the Plan for one or more of its eligible employees for the plan year.

2

*performance award*:  an incentive bonus credited to a participant's plan account in an amount based on the participant's performance relative to the performance goals and objectives established for him or her for the plan year and which is to vest and become payable only upon the participant's continuation in employee status for a designated term.

*plan accounts*:  the accounts maintained on your behalf on the books and records of your participating employer to which your performance awards or special awards (if any) under the Plan are to be credited subject to any applicable vesting requirements; each such plan account will be divided into a series of subaccounts which correspond to each plan year in which you participate.

*plan administrator*:  Wells Fargo's Director of Compensation and Benefits (or the functional equivalent to such position).

*plan year*:  the twelve (12)-month period coincident with the calendar year.

*release*:  a release of claims against Wells Fargo and any affiliated company, the form and substance indicated by the participating employer, to be executed by the participant by the time specified by the participating employer.

*retirement*: a participant's voluntary termination of employee status at a time when the employee is at least age fifty (50), has completed at least three (3) years of continuous service as an employee, and has a combined age and length of continuous service as an employee of at least sixty (60) years, provided that the participant does not become associated with any financial services businesses for a period of three (3) years beginning from the date of retirement (unless the participant has received a written waiver for this requirement from the Company) and the participant executes and delivers to the participant's participating employer, and does not revoke, the following agreements:  (A) a client transition agreement to the extent required by the management of the participating employer, and/or (B) a release.  Participants who are not eligible to enter into a client transition agreement for any reason other than failure to meet revenue or asset minimums under the client transition agreement program, in the plan administrator's sole discretion, will be deemed to have failed to meet the requirements for retirement. *special award*:  any award of compensation credited to a participant's account which is *not* based on the participant's performance relative to pre-established performance objectives for the plan year but which is to vest and be earned solely on the basis of his or her continuation in employee status for the designated service period applicable to that award.

*termination for cause*:  includes, but is not limited to, the termination of employee status due to (i) any act or omission on the part of the employee that constitutes a breach of his or her duties or obligations to the participating employer or other affiliated company, (ii) the employee's lack of commission production, as determined in the sole discretion of his or her participating employer, other than due to physical or mental injury or illness, (iii) the employee's commission of any act of fraud, misappropriation, embezzlement or dishonesty reasonably expected to have an injurious effect upon the participating employer or other affiliated company, (iv) the employee's failure to obtain or retain any FINRA, SEC, or other necessary registration or license required for his or her position with the participating employer, (v) any breach by the employee of the Code of Ethics established by his or her participating employer or the Company, as applicable, or any material violation of the employment or compliance policies or procedures of his or her participating employer, (vi) any act of insubordination or misconduct by the employee or his or her reporting to work or otherwise working while under the influence of alcohol, narcotics or unlawful controlled substances, (vii) the employee's conviction of any felony or of any misdemeanor involving either the purchase or sale of any security or the commission of a dishonest or fraudulent act, (viii) any conduct by the employee that is in violation of state or federal law or that would constitute a basis for criminal charge or indictment of a felony or of a misdemeanor involving moral turpitude, (ix) the employee's violation of any securities or commodities laws, any rules or regulations pursuant to such laws, any rules or regulations of any securities or commodities exchange or association of which the participating employer is a member, or his or her violation of any similar federal, state or local law, regulation, ordinance or licensing requirement applicable to employees of financial institutions, or (x) any other conduct on the employee's part that may reasonably be expected to have a material adverse effect upon the financial interest or business reputation of the participating employer or other affiliated company.

3

### Participation

The plan administrator will have absolute discretion in selecting the eligible employees who are to participate in the Plan for each plan year and in determining the terms and conditions of any awards for which they may qualify for such year. Individuals selected as participants for a particular plan year may be excluded from participation for one or more subsequent plan years. If an individual is excluded from participation for one or more plan years, the individual will not receive an award for those plan years, however, the individual may continue to direct the hypothetical investment of his or her existing plan account while an employee of Wells Fargo or an affiliated company and will continue to earn vesting credit with respect to the plan account during such continued employment at Wells Fargo or an affiliated company.

Participants for each plan year will be selected not later than the ninetieth (90th) day of that plan year. However, the plan administrator may select additional participants after such ninetieth (90th) day. Any participant selected for a performance award after such ninety (90)-day period may, in the plan administrator's sole discretion, qualify for either a full performance award for the plan year or only a pro-rated award based on his or her actual period of participation during that plan year.

### Performance Awards

If you are selected for participation for any plan year, then the plan administrator will, not later than the ninetieth (90th) day of that plan year, establish the applicable performance goals and objectives which you must attain for that plan year and communicate those objectives to you. If you are selected for participation in the performance award program after the start of a plan year, then the applicable performance objectives will be established and communicated within thirty (30) days after the date of your selection.

NOTE: The targeted performance award for a particular plan year may vary from selected participant to participant, and the targeted performance award for each selected participant may vary from plan year to plan year.

The actual performance award (or portion thereof) to be credited to your plan account will be determined on the basis of your performance relative to the goals and objectives established for that award. Accordingly, your plan account will not be credited with any portion of your performance award until the plan administrator has made that determination. Such determination will be made in the calendar year next following the close of that plan year, generally by January 31 or such later date during such year as determined by the plan administrator in its discretion. Any resulting performance award for a particular plan year will accordingly be credited to your account following the plan administrator's determination, generally by January 31 or such later date during such year as determined by the plan administrator in its discretion.

Any performance award credited to your plan account will in addition be subject to a vesting schedule tied to your continuation in employee status for a designated period following the close of the plan year for which that award is made. For further information, see the "*Vesting*" section below.

### Special Awards

In addition to the performance awards authorized under the Plan, the plan administrator may also make special awards under such circumstances as the plan administrator deems appropriate, including (without limitation) as a recruitment vehicle to attract new employees who qualify as eligible employees under the Plan or as a special retention incentive to motivate eligible employees to remain with the participating employer. Each special award will have the same distribution and payout provisions applicable to the performance awards made under the Plan. The vesting provisions to be in effect for the special awards will be determined by the plan administrator. For further information, see the "*Vesting*" section below.

### Extended Deferral Elections

A participant may make an extended deferral election with respect to any performance or special award subaccount which is scheduled to vest pursuant to the cliff vesting provisions, as described in the "*Vesting*" section. The extended deferral election must be filed at least twelve (12) months prior to (i) January 1 of the

4

calendar year of the originally scheduled payment date for the subaccount or (ii) any earlier date on which the subaccount is scheduled to be paid. The extended deferral election for that subaccount will not become effective for twelve (12) months.

The extended deferral election must specify a payment (or payment commencement) date, in accordance with any additional terms specified by the plan administrator, that is the earlier of (i) the year in which the participant elects or (ii) within 90 days following the participant's termination of employee status, however, in no event earlier than at least five (5) years following the originally scheduled payment date for that particular subaccount (without regard to the extended deferral election). In the extended deferral election the participant may elect to receive such subaccount in installment payments over five (5) or ten (10) years in lieu of a lump sum payment.

Notwithstanding anything to the contrary, a participant may not make an extended deferral election with respect to a special award subaccount made for retirement or retention purposes which is to vest upon the participant's satisfaction of the applicable age and years of service.

*Deferral Elections and Matching Contributions. Prior to January 1, 2009, the Plan permitted voluntary elective deferrals of eligible compensation and provided for certain matching contributions in connection with voluntarily deferred compensation. The Plan no longer permits voluntary deferrals nor provides matching contributions. For information about any such amounts contributed prior to January 1, 2009, please see the plan prospectus dated [X].*

## Changes in Status

The following provisions will be in effect in the event you experience certain changes in your employee status.

*Transfer to New Employer:* Should you transfer to an affiliated company which is not a participating employer in the Plan, then no additional awards under the Plan shall be credited to your plan accounts under the Plan, except to the extent (if any) the plan administrator may in its sole discretion determine to provide a partial performance award based upon your performance for the portion of the plan year prior to such transfer. However, you will continue to vest in your plan account during your period of continued employee status following such transfer.

*Change in Employee Status:* Should you experience a change in employee status which makes you eligible to participate in another deferred compensation program sponsored by Wells Fargo, then you will no longer qualify for any additional awards under the Plan, except to the extent (if any) the plan administrator may in its discretion determine to provide a partial performance award based upon your performance for the portion of the plan year prior to such change in status. However, you will continue to vest in your plan account during your period of continued employee status following such change. Notwithstanding anything herein to the contrary, if an employee leaves employment with a participating employer in order to render services in association with Wells Fargo Advisors Financial Network, LLC, the employee's unvested plan accounts will be forfeited.

*Disability Leave:* Should you cease active service by reason of a disability leave, then you will no longer be eligible for any additional awards under the Plan during the period of your disability leave, except to the extent (if any) the plan administrator may in its sole discretion determine to provide a partial performance award based upon your performance for the portion of the plan year prior to the commencement of your disability leave. You will continue to vest in your plan account during the period you remain on disability leave. Should you fail to return to active service within six (6) months of disability leave, then you will be deemed to have voluntarily resigned from employee status for purposes of the vesting and distribution provisions of the Plan. However, after six months of disability leave, you shall continue to vest in your plan accounts during your disability leave, regardless of your being deemed, for purposes of the Plan, to have voluntarily resigned from employee status. Additionally, should you satisfy the age and service requirement for retirement at the time of your termination of employee status, then such termination will be treated as retirement for purposes of those vesting and distribution provisions, provided that you do not become associated with any financial services businesses for a period of three (3) years beginning from the date of retirement (unless you have received a written waiver for this requirement from

the Company) and you executes and deliver to the Company and do not revoke, the following agreements: (A) a client transition agreement to the extent required by the management of the Company, and/or (B) a release. Participants who are not eligible to enter into a client transition agreement for any reason other than failure to meet revenue or asset minimums under the client transition agreement program, in the plan administrator's sole discretion, will be deemed to have failed to meet the requirements for retirement. Should you return to active service within sixty (60) days following the cessation of your disability benefits under the LTD Plan, then distributions will be made from your plan account in accordance with the provisions set forth in the "*Distribution of Benefits*" section.

**Vesting**

The purpose and intent of the awards made to you under the Plan are to assure your continued service and to encourage you to contribute to the long-term growth and financial success of your participating employer.

Accordingly, a separate vesting schedule will be in effect for each subaccount maintained for you under the Plan. The applicable vesting schedule will be established by the plan administrator not later than the ninetieth (90th) day of the plan year to which the particular subaccount relates (or, with respect to special awards, such other date as determined by the plan administrator) and will be tied to your continuation in employee status for a designated period of years. The vesting schedule for any performance award or special award made to you after the start of the plan year will be established by the plan administrator not later than the date that award is communicated to you.

The vesting schedule applicable to each performance award will be structured in the form of (i) a cliff vesting formula pursuant to which the entire subaccount to which that award is credited will vest upon the participant's continuation in employee status for a specified period following the close of the plan year to which that subaccount relates or (ii) an installment vesting schedule pursuant to which the subaccount will vest in a series of two or more successive equal annual installments over a period of continued employee status following the close of the plan year to which that subaccount relates, with the dollar amount of each vested installment to be adjusted to reflect its pro-rata share of investment gains and losses allocated to the subaccount through the vesting date. The plan administrator will also have the discretionary authority to structure a performance award so that the award will vest, in whole or in part, on an accelerated basis upon the occurrence of other events designated by the plan administrator at the time the performance award is made.

The vesting provisions to be in effect for the special awards made for a particular plan year will be determined by the plan administrator, subject to the following limitations:

(i)      The vesting schedule will be the same for each separate category of special award made during the plan year. For example, special awards for recruitment purposes would form one category, whereas a series of special awards for another designated purpose would form a separate category. Although all special awards of the same category must have the same vesting schedule, each separate category of special awards made during the plan year may have its own separate vesting schedule. However, except as otherwise specified in subparagraph (iii) below, each such vesting schedule shall be structured in either of the following forms:

-      a cliff vesting formula pursuant to which the entire subaccount attributable to each special award within the same category will vest upon the participant's continuation in employee status for a specified period following the close of the plan year to which that subaccount relates, or

-      an installment schedule pursuant to which the special award credited to the subaccount will vest in a series of two or more successive equal annual installments over a period of continued employee status following the close of the plan year to which that subaccount relates, with the dollar amount of each vested installment to be adjusted to reflect its pro-rata share of investment gains and losses allocated to the subaccount through the vesting date.

6

(ii)     The plan administrator will also have the discretionary authority to accelerate the vesting of one or more outstanding special awards in whole or in part at any time, whether during the participant's continuation in employee status or in connection with his or her cessation of such employee status.

(iii)     Special awards made for retirement or retention purposes will not vest unless the participant continues in employee status until he or she satisfies the applicable age and years of service requirement for such retirement and shall become distributable upon his or her subsequent cessation of employee status, subject to any required deferral of the commencement date for such distribution under Section 409A(a)(2) of the Code.  Please see the NOTE in the "*Distribution of Benefits*" section below for further information concerning such potential deferral.

If you are awarded such a special award for a particular plan year, then you will be notified by the plan administrator of the requisite service period in effect for the vesting of that award at the time of the award.  The vesting schedule for any special award made to you after the start of the plan year will be established by the plan administrator not later than the date that award is communicated to you.

For purposes of all such vesting schedules, you will be deemed to continue in employee status for so long as you are employed by any of the following entities:  the Company, Wells Fargo or any other affiliated company.

In addition, the plan account to which your performance awards are credited will vest in full on an accelerated basis should your employee status terminate by reason of either of the following events:

(a)     an involuntary termination other than a termination for cause, or

(b)     your death.

If your employment terminates due to retirement, all balances in your plan subaccounts to which your performance awards are credited that are not at that time vested in accordance with the applicable vesting schedules shall continue to vest so long as you do not become associated with any financial services businesses for a period of three (3) years beginning from the date of retirement (unless you have received a written waiver for this requirement from the Company) and you execute and delivers to the Company, and do not revoke, the following agreements:  (A) a client transition agreement to the extent required by the management of the participating employer, and/or (B) a release.  Participants who are not eligible to enter into a client transition agreement for any reason other than failure to meet revenue or asset minimums under the client transition agreement program, in the plan administrator's sole discretion, will be deemed to have failed to meet the requirements for retirement. Additionally, if your employment terminates while you are on disability leave, all balances in your subaccount may continue to vest, as described in "**disability leave**" above.

One or more of your special awards may contain a similar vesting acceleration provision. You should review the actual documentation for each of your special awards to determine whether or not that particular special award will vest on such an accelerated basis.

Each of your plan subaccounts will be forfeited should either of the following events occur prior to your vesting in that subaccount: (i) you voluntarily terminate your employee status without satisfying the requirements for retirement vesting or (ii) you are terminated for cause.

Investment Return

You may select one or more of the investment funds identified in Appendix I to this document as the measure of the investment return on your plan account. Before you may make your actual selection, you should carefully review Appendix II for information concerning the investment performance of each investment fund for the periods indicated and the prospectus (if any) for each such investment fund.

You may obtain copies of such prospectuses, as well as additional information concerning each investment fund, through the Teamworks site on the Intranet at *http://portal.teamworks.wellsfargo.com/Pages/Default.aspx*

Wells Fargo reserves the right to change the available investment funds at any time.

Because your investment returns under the Plan are tied to the performance of the available Investment funds, your plan account will be subject to the investment risks of the funds you select, and you may incur substantial losses which could substantially reduce the amount you eventually receive from your plan account.

*NOTE*: Neither Wells Fargo nor your participating employer will provide you with any advice concerning your extended deferral election or your selection of the investment funds to serve as the measure of return on your awards under the Plan. You must consult with your own financial advisor.

You must select the applicable investment funds that will apply to your plan subaccounts. Any award credited to your plan account for a particular plan year will, in the absence of an existing investment allocation election made by you with respect to that subaccount, be automatically deemed invested in the CD Option and will continue to be deemed so invested until you reallocate the balance of that account to one or more other investment funds. On each day on which the U.S. financial markets are open, your plan account will be adjusted to reflect the investment gains, earnings or losses those accounts would have actually realized had they been invested on that day in the CD Option or any other investment funds you subsequently select.

You may elect at any time to reallocate (in such percentages as the plan administrator authorizes) part or all of the balance of your plan account among the available investment alternatives. Each designated reallocation will be effected as soon as reasonably practicable after you file the new allocations in accordance with procedures established by the plan administrator or its designate.

Following the close of each calendar quarter, you will receive a statement of the value of your plan account as of the last valuation date in that quarter. The value of your plan account on any valuation date in question will be equal to the balance credited to that particular account as of the close of business on that date, including the appropriate adjustments for (i) any deferred eligible incentive earnings or investment gains or earnings credited to that particular account as of such date and (ii) any forfeiture or investment losses charged against that particular account as of that date.

*NOTE*: Although the investment return on each of your plan accounts is to be measured by the actual gains, earnings and losses realized by one or more of the investment alternatives you select, neither Wells Fargo nor any participating employer will be under any obligation to make the selected investments, and the investment experience will only be tracked as debits or credits to your book accounts over the period in which your awards remain in the plan. To the extent Wells Fargo or any participating employer should elect to make any actual investments, the purchaser will be the sole and exclusive owner of those investments, and neither you nor any other participant in the Plan will have any right, title or interest in or to those investments.

The plan administrator may, with respect to one or more performance or special awards, require that all or a portion of the subaccount attributable to that award be deemed to be invested in the Wells Fargo common stock fund for such period as the plan administrator may specify (including, without limitation, all or part of the vesting period in effect for such award), and no investment reallocations would be permitted with respect to that subaccount until such period expired.

**Distribution of Benefits**

The following provisions will govern your distribution rights under the Plan:

8

Should you terminate employee status prior to the designated commencement date for your distribution, then distribution of the vested balance of each of your subaccounts will commence as soon as reasonably practical following your termination date. Accordingly, distribution of the vested balance of each subaccount will begin as soon as administratively practical following the *earlier* of (i) the designated commencement date for that subaccount or (ii) the date your employee status ceases for any reason.

*Note:* If you are deemed, for the plan year in which you terminate employee status, to be (i) one of the top fifty (50) highest-paid officers of Wells Fargo with annual compensation in excess of $160,000 for the 2011 calendar year (subject to cost-of-living adjustments for calendar years after 2011), (ii) a five percent (5%) owner, or (iii) or a one percent (1%) owner with annual compensation in excess of $150,000, then no distribution will be made to you until the *earlier* of (i) the expiration of the six (6)-month period measured from your date of separation from service or (ii) the date of your death, if delayed commencement is otherwise required in order to avoid a distribution under Code Section 409A(a)(2). Upon expiration of any applicable Code Section 409A(a)(2) deferral period, all payments deferred (whether they would have otherwise been payable in a single sum or installments) will be paid in a lump sum, and any remaining payments due under the Plan will be made in accordance with the normal payment dates specified for them in the Plan.

*Performance Award and Special Award Subaccounts.* Except as provided herein, the vested balance of each of your performance award and special award subaccounts will become due and payable as follows:

(i) If the subaccount vests pursuant to a cliff vesting schedule, then that subaccount will be paid in a lump sum on the thirtieth (30th) day following the vesting date or as soon after that scheduled payment date as administratively practicable, but in no event later than the *later* of the close of the calendar year in which that scheduled payment date occurs or the fifteenth (15th) day of the third (3rd) calendar month following that scheduled payment date;

(ii) If the subaccount vests in a series of installments, then the portion of the subaccount which vests on each applicable vesting date will be paid on the thirtieth (30th) day following that vesting date or as soon after that scheduled payment date as administratively practicable, but in no event later than the *later* of the close of the calendar year in which that scheduled payment date occurs or the fifteenth (15th) day of the third (3rd) calendar month following that scheduled payment date; or

(iii) Notwithstanding anything to the contrary in subparagraphs (i) or (ii) above, if (A) you satisfy the age and service requirements for retirement prior to the scheduled cliff vesting date or any installment vesting date in effect for the subaccount, (B) your subaccount vests upon an involuntary termination (other than due to your death) pursuant to the vesting acceleration provisions described in *"Vesting"* section, or (C) your subaccount vests during your disability leave as described in the *"Changes in Status"* section, then the vested balance of that subaccount will be paid on the thirtieth (30th) day following the scheduled cliff vesting date or each applicable installment vesting date, but in no event later than the *later* of the close of the calendar year in which that scheduled payment date occurs or the fifteenth (15th) day of the third (3rd) calendar month following that scheduled payment date.

*Voluntary Termination/Termination for Cause.* Should you voluntarily resign from employee status prior to satisfying the age and service requirements for retirement, or should your employee status be involuntarily terminated as a result of a termination for cause, then the distribution of the vested balance of your account, will commence as soon as administratively practical following such cessation of employee status (in a lump sum or installments, depending on your election made at the time of enrollment). *NOTE:* A participant who does not return to active service within sixty (60) days following the cessation of his or her disability benefits under the LTD Plan will be deemed to have voluntarily resigned from employee status, except to the extent such termination of employee status may otherwise qualify as retirement.

*Amounts Subject to an Extended Deferral Election.* Notwithstanding the payment information above, if you have completed an Elective Deferral Election for any Performance Award or Special Award subaccount and such Elective Deferral Election has become effective as of the originally scheduled payment date, then such Performance Award or Special Award subaccount shall be paid according to the terms of the Elective Deferral Election.

*Mandatory Lump Sum Payment.* Even though you may have elected an installment distribution in your deferral election form, your vested account balances under the Plan will be paid out in a mandatory lump sum payment should the balance of your deferral election account and all other nonqualified deferred compensation accounts be less than the dollar limitation imposed under Code Section 402(g) as may be adjusted (which the amount is $16,500 in 2011) in the aggregate at the time of your cessation of employee status.

*Hardship Withdrawal.* Should you incur a severe financial hardship as a result of (i) an illness or accident involving yourself, your spouse, your beneficiary, or any dependent, (ii) a casualty loss involving your property or (iii) other similar extraordinary and unforeseeable events beyond your control and you do not have any other resources available, whether through reimbursement or compensation (by insurance or otherwise) or liquidation of existing assets (to the extent such liquidation would not itself result in financial hardship), to satisfy such financial emergency, then you may apply to the plan administrator for an immediate distribution from the vested balances of your Plan subaccounts, in an amount necessary to satisfy such financial hardship and the tax liability attributable to such distribution. The plan administrator will have complete discretion to accept or reject the request and will in no event authorize a distribution in an amount in excess of that reasonably required to meet such financial hardship and the resulting tax liability.

*Distribution Upon Death.* The following provisions will govern the payment of your vested plan accounts in the event of your death while in employee status or at any time thereafter:

*Lump Sum Payment.* Should you die before the portion of your plan accounts to which you are entitled is completely distributed, then such undistributed portion will be paid in a lump sum to your designated beneficiary(ies) under the Plan. Such payment will be made as soon as administratively practical following your death, but in no event later than the later of the close of the year of your death or the fifteenth (15th) day of the third (3rd) calendar month following your death.

*Beneficiary Designation.* You may designate one or more beneficiaries for your plan accounts at any time. In addition, you may revoke your existing beneficiary designation and make a new designation. However, all beneficiary designations must be made in accordance with the procedures established by the plan administrator or its designate.

Should you die without a valid beneficiary designation in effect, then any amounts due you under the Plan will be paid to the personal representative of your estate.

*Valuation.* Any amount to be distributed from your subaccount will be based on the vested balance credited to that account as of the most recent practical valuation date preceding the date of the actual distribution. However, if a lump sum distribution to be made in connection with your cessation of employee status or death or an installment distribution is to commence in connection with your cessation of employee status, then the amount of that lump sum distribution or the first installment of that installment distribution will be based on the vested balance credited to each of your subaccounts as of the valuation date coincident with the date of your cessation of employee status or death.

10

*Summary Chart.* The following chart will serve as an easy reference guide to the various distribution provisions of the Plan.

| Your reason for leaving | What happens to your account balance | |
| --- | --- | --- |
| | Unvested balance | Vested balance |
| Retirement (before the end of a previously elected deferral period) | The unvested balance of your account will continue to vest upon your retirement, provided you meet any non-compete requirements and/or program eligibility requirements and deliver any client transition, and release agreements required by your participating employer. | The vested balance will be distributed pursuant to the original vesting schedule of your account, (in a lump sum or installments, depending on your prior election, if effective), provided you meet any non-compete requirements and/or program eligibility requirements and deliver any client transition, and release agreements required by your participating employer.* |
| Voluntary termination or involuntary termination for cause | The unvested balance of your account will be forfeited. | The vested balance will be paid as soon as administratively practical after your termination date or in accordance with your previously elected deferral date and form, if effective.* |
| Involuntary termination not for cause (i.e., layoff) | The unvested balance of your account will vest at termination. | The vested balance will be paid as soon as administratively practicable after the originally scheduled payment date for such subaccount or in accordance with your previously elected deferral date and form of payment, if effective . * |
| Disability | The unvested balance of your account will continue to vest while you are on disability leave. No further vesting will occur after your disability leave ends unless you return to active employment. | The vested balance will be paid pursuant to the original vesting schedule of such subaccount or in accordance with your previously elected deferral date and form or payment, if effective . * |
| Death | The unvested balance of your account will vest at your death. | The vested balance will be paid in a lump sum to your beneficiary. If you did not name a beneficiary, your vested balance will be paid to the personal representative of your estate in a lump sum. |
| Financial Hardship | Not distributable. | The vested balance may, at the discretion of the plan administrator, be distributed to you to the extent necessary to meet the financial hardship and the tax liability attributable to the distribution. |

11

* If you are deemed, for the plan year in which you terminate employee status, to be (i) one of the top fifty (50) highest-paid officers of Wells Fargo with annual compensation in excess of $160,000 for the 2011 calendar year (subject to cost-of-living adjustments for calendar years after 2011), (ii) a five percent (5%) owner, or (iii) a one percent (1%) owner with annual compensation in excess of $150,000, then no distribution will be made to you until the *earlier* of (i) the expiration of the six (6)-month period measured from your date of separation from service or (ii) the date of your death, and delayed commencement is otherwise required in order to avoid a distribution under Code Section 409A(a)(2). Upon expiration of any applicable Code Section 409A(a)(2) deferral period, all payments deferred (whether they would have otherwise been payable in a single sum or installments) will be paid in a lump sum, and any remaining payments due under the Plan will be made in accordance with the normal payment dates specified for them in the Plan.

*Withholding.* Any distribution made to you under the Plan will be subject to all required federal, state and local income and employment/payroll taxes, and you will only receive the balance of the distribution after those withholding taxes have been collected.

*Offset.* Should you become entitled to a distribution under the Plan at a time when you have an outstanding debt or other monetary obligation owed to your participating employer or any other affiliated company, then your participating employer will be authorized, to the maximum extent permissible by law, to offset the amount of that debt or obligation (whether or not then due and payable) against the amount of benefits which otherwise remain distributable to you after all applicable withholding taxes have been collected from that distribution.

General Creditor Status

You will be a creditor of your participating employer with respect to any amounts owed to you as a result of the vested balances credited to your plan accounts. As sponsor of the Plan, Wells Fargo will serve as guarantor for the payment of those vested balances. However, your participating employer's obligation to pay the vested balances of your plan accounts as well as Wells Fargo's guarantee of that obligation will at all times be an unfunded and unsecured obligation, and you will bear the full risk of loss should your participating employer or Wells Fargo become financially insolvent or otherwise unable to pay its debts as they mature. Neither Wells Fargo nor any participating employer will have any obligation to establish any trust, escrow arrangement or other fiduciary relationship for the purpose of segregating funds for the payment of the balances credited to your plan accounts, nor will Wells Fargo or any participating employer be under any obligation to invest any portion of its general assets in mutual funds, stocks, bonds, securities or other similar investments in order to accumulate funds for the satisfaction of its respective obligations under the Plan. You will at all times be a general, unsecured creditor of your participating employer with respect to the vested balance of your plan accounts, and you (or your beneficiary) must look solely and exclusively first to the general assets of your participating employer, and then to the general assets of Wells Fargo as guarantor, for the payment of the vested balances credited to your plan accounts.

Risks of Plan Participation

Although as a participant you may receive performance or special awards (at the discretion of the plan administrator), you should be aware of the following financial risks of such participation:

*Risk of Forfeiting Unvested Balances.* Each plan subaccount established for you will be subject to a vesting schedule, and you will forfeit each such subaccount, including the investment earnings credited to that subaccount, if you voluntarily leave the Company, or you are terminated for cause, before that subaccount vests.

*Future Tax Uncertainty.* Your income tax rate could change in the future, possibly increasing your tax liability when your account balances are paid. Recently-enacted legislation governing the taxation of deferred compensation has imposed substantial restrictions on participant rights and benefits, and future regulations issued pursuant to that legislation may require the Company to impose additional restrictions and limitations or otherwise modify one or more current features of the Plan in a manner which may be adverse to the interest of participants but which may be necessary to avoid current income taxation of their plan accounts.

12

*Unfunded and Unsecured Account Balances.*   Your plan accounts are simply bookkeeping entries, and there are no actual funds or assets held in those accounts. The obligation to pay the vested balances of your plan accounts is an unfunded, unsecured obligation of your participating employer and of Wells Fargo as guarantor. In the event your participating employer or Wells Fargo were to become insolvent or bankrupt, your right to receive the vested balances credited to your plan accounts would be that of a general unsecured creditor, and it is likely in such event that you would lose substantially all of the balances credited to your plan accounts.

*Investment Risk.*   Because your investment returns under the Plan are tied to the performance of certain investment funds, your plan accounts will be subject to the investment risks of the funds you select, and you may incur substantial losses which could substantially reduce the amount you eventually receive from your plan accounts.

*Unexpected Distributions.*   Certain events (such as your voluntary termination or your termination with or without cause) may trigger an automatic lump-sum distribution of your subaccounts at a time that could be disadvantageous to you from a tax or investment perspective.

*Tax-Necessitated Modifications.*   Finally, you should be aware that your deferral election, the investment procedures and various investment choices governing the investment of your plan accounts and the provisions governing the distribution of those accounts will be subject to such modifications and additional restrictions and limitations as the plan administrator may deem necessary in order to avoid current taxation of your plan accounts as a result of the tax laws or regulations governing deferred compensation arrangements. Please see the *"Amendment/Termination"* section below for further information.

Federal Tax Consequences

The following is a general description of the federal income and employment tax consequences of participation in the Plan. State and local tax treatment is not discussed and may vary from the federal tax treatment summarized below. You should consult with your own tax advisor as to the specific tax consequences of your participation in the Plan.

*Federal Income Taxation.*   Under current federal income tax laws and regulations, you will not recognize any taxable income with respect to awards, the eligible incentive earnings you defer into the Plan or any investment earnings credited to your plan accounts, until you receive a distribution from those accounts. Accordingly, you will not incur any current income tax liability with respect to your deferred eligible incentive earnings or any other amounts credited to your plan accounts. However, whenever you receive a distribution from your plan accounts, you will recognize immediate taxable income in an amount equal to the distribution, and you will have to satisfy the federal income tax withholding liability (as well as state and local income tax withholding) applicable to that distribution.

Your participating employer will be entitled to an income tax deduction, for any taxable year in which you receive a distribution from your plan accounts, in an amount equal to the distribution.

All awards credited to your plan accounts will be disclosed on your Form W-2 wage statement even though those amounts are not subject to income taxation until distributed. All distributions made to you from your plan accounts will be reported on a Form W-2 wage statement.

*Federal Employment Taxes.*   Under current federal employment tax laws and regulations, any amounts which you defer under the Plan will be subject to Social Security and Medicare withholding taxes at the time those amounts would have otherwise been paid to you in the absence of your deferral election, but no additional Medicare and Social Security taxes will be due when you subsequently receive your deferral election account (including the investment earnings thereon).

Each of your plan subaccounts, together with the investment earnings credited to that subaccount, will be subject to Medicare and Social Security withholding taxes at the time that plan subaccount vests. However,

13

no additional Medicare and Social Security taxes will be due when you receive your subaccount (even if the balance of that subaccount increases through additional investment gains realized after the applicable vesting date).

Your participating employer will withhold all required Social Security and Medicare taxes from your wages or other earnings, as those taxes become due and payable.

For the 2011 calendar year, you will have to pay Social Security taxes at the rate of 4.2% on the first $106,800 of your taxable wages for the year. The Social Security taxable wage base usually increases from year to year. Your Medicare tax rate is 1.45%, and it is imposed on all of your taxable wages for the year.

Miscellaneous

The following is a summary of certain miscellaneous provisions of the Plan which will govern your rights and benefits:

*ERISA/Code Section 401(a).* The Plan is designed as an unfunded deferred compensation program for a select group of management and other highly-compensated employees of the participating employers. As such, the Plan is not subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), except for the claims procedures and enforcement provisions of Part 5 of Title I of ERISA. In addition, the Plan is not a retirement plan qualified under Code Section 401(a).

*No Employment Rights.* Neither the action of Wells Fargo nor your participating employer in establishing or maintaining the Plan, nor any action taken under the Plan by the plan administrator, nor any provision of the Plan itself will provide you with any right to remain in employee status for any period of specific duration, and you will at all times remain an employee at will and may accordingly be discharged at any time, with or without cause and with or without advance notice of such discharge.

*Amendment/Termination.* The Board of Directors of Wells Fargo (the "Board") or the Human Resources Committee of the Board may at any time amend the Plan in any manner. The Board or the Human Resources Committee of the Board may also at any time suspend or terminate the Plan. Except as otherwise set forth in the *"Tax-Necessitated Modifications"* section below, no such plan amendment or plan termination will adversely affect the benefits of participants accrued to date under the Plan or otherwise reduce the then outstanding balances credited to the plan accounts or otherwise adversely affect the vesting schedules or distribution provisions in effect for those accounts, and the balances credited to those accounts prior to the date of any such amendment or termination.

*Tax-Necessitated Modifications.* Should the Board or the Human Resources Committee of the Board determine that additional restrictions must be placed either on the rights of participants with respect to their ability to make or change distribution elections, their ability to defer distributions through the rollover election or their rights as creditors under the Plan or on one or more of the distribution provisions of the Plan in order to avoid current taxation of amounts deferred under the Plan, then the Board or the Human Resources Committee of the Board may amend the Plan to impose such restrictions and/or terminate the rollover election provisions. Legislation passed by the U.S. Congress in 2004 governing the taxation of deferred compensation has imposed substantial restrictions on participant rights and benefits, and future regulations or other guidance issued pursuant to that legislation may require Wells Fargo to impose additional restrictions and limitations or otherwise modify one or more current features of the Plan in a manner which may be adverse to the interest of participants but which may be necessary to avoid current income taxation of their plan accounts.

*Applicable Law.* The Plan is intended to constitute an unfunded deferred compensation arrangement for a select group of management and other highly compensated persons, and all rights under the Plan will be construed, administered and governed in all respects in accordance with the provisions of the Employee Retirement Income Security Act of 1974 (as amended from time to time) applicable to such an arrangement and, to the extent not pre-empted thereby, by the laws of the State of North Carolina without resort to its conflict-of-laws provisions.

*Satisfaction of Claims.* Any payment made to a participant (or his or her legal representative or beneficiary) in accordance with the terms of the Plan will to the extent thereof be in full

14

satisfaction of all claims with respect to that payment which such person may have against the Plan, the plan administrator, Wells Fargo, the participating employer and all other affiliated companies, any of whom may require such person, as a condition precedent to such payment, to execute a receipt and release in such form as shall be determined by the plan administrator.

*Alienation of Benefits.* No person entitled to benefits under the Plan will have any right to transfer, assign or otherwise encumber his or her interest in such benefits prior to actual receipt of those benefits, except in accordance with a qualified domestic relations order issued with respect to any particular subaccount, provided the participant is at the time fully vested in the portion of the subaccount assigned or distributed to his or her spouse in accordance with the terms of the order.

*Expenses.* Plan accounts will be charged with their allocable share of the costs and expenses incurred in the operation and administration of the Plan, except to the extent one or more participating employers elect to pay all or a portion of those costs and expenses. For the 2011 plan year, the participating employers will pay all costs and expenses, except that a seventy-five dollar ($75.00) administrative fee per year will be charged in the aggregate against your plan accounts with vested balances.

*Successors and Assigns.* The obligation of each participating employer to make the payments required under this Plan shall be binding upon the successors and assigns of that participating employer, whether by merger, consolidation, acquisition or other reorganization. Except for modifications, limitations or restrictions as may be required to avoid current taxation or adverse tax consequences to participants as a result of changes to the tax laws and regulations, no amendment or termination of the Plan by any successor or assign shall adversely affect or impair the rights of participants to receive benefit payments to the extent attributable to amounts credited to their accounts prior to the date of such amendment or termination, in accordance with the vesting and distribution provisions as in effect immediately prior to such amendment or termination.

## Benefit Claims

No application is required for the payment of benefits under the Plan. However, if you believe you are entitled to a benefit from the Plan which differs from the benefit determined by the plan administrator, then you may file a written claim for benefits with the plan administrator. Your claim will be acted upon and approved or disapproved within ninety (90) days following receipt by the plan administrator.

In the event your claim is denied, in whole or in part, the plan administrator will notify you in writing of such denial and of your right to a review by the plan administrator and will set forth the specific reasons for such denial, specific references to pertinent provisions of the Plan on which the denial is based, a description of any additional material or information necessary to perfect the claim, an explanation of why such material or information is necessary, and an explanation of the review procedure.

If your claim is denied in whole or in part, you may appeal to the plan administrator for a full and fair review of the decision by submitting to the plan administrator, within ninety (90) days after receiving written notice from the plan administrator of such denial, a written statement:

    –    requesting a review by the plan administrator of your claim;

    –    setting forth all of the grounds upon which the request for review is based and any facts in support thereof; and

    –    setting forth any issues or comments which you deem pertinent to your claim.

The plan administrator will act upon such appeal within sixty (60) days after receipt of your request for review, unless special circumstances require an extension of time for processing. If such an extension is required, written notice of the extension will be furnished to you within the initial sixty (60)-day period, and a decision will be rendered as soon as possible, but not later than one hundred twenty (120) days after receipt of the initial request for review. The plan administrator will make a full and fair review of your appeal and any written materials submitted by you or your participating employer in connection therewith and may require you or your participating employer to submit such additional facts, documents or other evidence as the plan administrator may,

15

in its sole discretion, deem necessary or advisable in making such a review.  On the basis of its review, the plan administrator will make an independent determination of your eligibility for benefits under the Plan.  The decision of the plan administrator on your claim will be final and conclusive upon all persons.

Should the plan administrator deny your appeal in whole or in part, the plan administrator will give you written notice of such decision, setting forth the specific reasons for such denial and specific reference to the pertinent Plan provisions on which the decision was based.  The notice will also include a statement that the claimant has a right to bring a civil action under Section 502 of the Employee Retirement Income Security Act of 1974, as amended.

## AVAILABLE INFORMATION

## INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE

Wells Fargo & Company ("Wells Fargo") is a Delaware corporation that maintains its principal executive offices at 420 Montgomery Street, San Francisco, California 94163. The telephone number at the executive offices is 1-800-292-9932. You may contact Wells Fargo at this address or telephone number for further information concerning the Plan and its administration.

Wells Fargo is subject to the informational requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and in accordance therewith files reports, proxy statements and other information with the Securities and Exchange Commission ("SEC"). Such reports, proxy statements and other information can be inspected and copied at the public reference facilities maintained in the SEC's Public Reference Room in Washington, D.C. at 100 F Street, NE, Washington, D.C. 20549. Please call the SEC at (800) SEC-0330 for further information on the Public Reference Room. The SEC also maintains a web site (www.sec.gov) that contains reports, proxy statements and other information regarding Wells Fargo. Such reports, proxy statements and other information also may be inspected at the offices of the New York Stock Exchange at 20 Broad Street, New York, NY 10005 and are also available at www.wellsfargo.com. Information on Wells Fargo's (or any of its subsidiary's) internet website, is not part of this document.

A copy of Wells Fargo's Annual Report to Stockholders for the most recent fiscal year will be furnished to each participant in the Plan, and an additional copy will be furnished without charge to the participant upon written or oral request. In addition, any participant receiving a copy of this Prospectus may obtain, without charge, upon written or oral request, a copy of any or all of the following documents incorporated by reference herein, except for certain exhibits to those documents. Written requests should be sent to: Corporate Secretary, Wells Fargo & Company, MAC N9305-173, Sixth and Marquette, Minneapolis, Minnesota 55479. Telephone requests may be directed to 1-612-667-8655.

Wells Fargo is incorporating by reference into this prospectus the information in certain documents Wells Fargo files with the SEC. This means that Wells Fargo is disclosing important information to you by referring you to those documents. The information incorporated by reference is considered to be a part of this prospectus and should be read with the same care. When Wells Fargo updates the information contained in documents that have been incorporated by reference by making future filings with the SEC, the information incorporated by reference in this prospectus is considered to be automatically updated and superseded, except that Wells Fargo is not incorporating by reference any document or information that is only "furnished" to the SEC or that is otherwise not deemed to be filed with the SEC. Documents incorporated by reference include, but are not limited to, the following:

> (a)     Wells Fargo's Annual Report on Form 10-K for the fiscal year ended December 31, 2010; and
>
> (b)     Wells Fargo's Current Reports on Form 8-K filed January 3, 2011, January 3, 2011, January 5, 2011, January 19, 2011, January 28, 2011, January 31, 2011, February 7, 2011, February 8, 2011, February 15, 2011, February 28, 2011, March 3, 2011, March 7, 2011, March 15, 2011, March 18, 2011, March 18, 2011, March 22, 2011, March 29, 2011, March 29, 2011, March 30, 2011, March 31, 2011 and April 5, 2011.

In addition, Wells Fargo incorporates by reference all documents subsequently filed by Wells Fargo pursuant to Sections 13(a), 13(c), 14 and 15(d) of the Exchange Act, except that Wells Fargo is not incorporating by reference any document or information that is only "furnished" to the SEC or that is otherwise not deemed to be filed with the SEC, after the date of this prospectus and prior to the filing of a post-effective amendment to the registration statement indicating that all securities offered by this prospectus have been sold or deregistering all securities remaining unsold.

*No person has been authorized to give any information or to make any representation other than as contained herein in connection with the offer contained in this document, and if given or made, such information or*

representation may not be relied upon as having been authorized by Wells Fargo. This document relates solely to the deferred compensation obligations issuable under the Plan, and it may not be used or relied on in connection with any other offer or sale of securities of Wells Fargo. This document does not constitute an offer to sell or a solicitation of an offer to buy any of these deferred compensation obligations in any state or other jurisdiction in which such offer or solicitation may not lawfully be made. Neither the delivery of this document nor any sale made hereunder shall, under any circumstances, create an implication that there has been no change in the affairs of Wells Fargo since the date hereof.

None of the SEC or any state regulatory authority has approved or disapproved of the deferred compensation obligations or the terms of their offer or passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.

## APPENDIX 1

### INVESTMENT FUNDS

| | |
|---|---|
| CD - 12 Month Equivalent | The investment objective of this earnings option is to preserve principal while earning a market rate of interest. The rate of return for a given month is the rate offered on the first day of each month by Wells Fargo Bank Minnesota, N.A. for certificates of deposit of $10,000 with a maturity of one year. |
| Dow Jones Target 2010 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2010 Index. |
| Dow Jones Target 2015 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2015 Index. |
| Dow Jones Target 2020 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2020 Index. |
| Dow Jones Target 2025 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2025 Index. |
| Dow Jones Target 2030 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2030 Index. |
| Dow Jones Target 2035 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2035 Index. |
| Dow Jones Target 2040 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2040 Index. |
| Dow Jones Target 2045 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2045 Index. |
| Dow Jones Target 2050 Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target 2050 Index. |
| Dow Jones Target Today Fund | The fund is a gateway fund that invests in various master portfolios, which in turn invest in a combination of equity, fixed income and money market securities to replicate the Dow Jones Target Today Index. |
| Emerging Markets Equity Fund | The fund seeks long-term capital appreciation by investing in approximately 70-90 securities of companies that are located, or do significant business, in emerging market countries. |
| EuroPacific Growth Fund | Seeks to provide long-term growth of capital by investing in companies based outside the United States. |
| NASDAQ 100 Index Fund | The fund seeks to match, as closely as possible, before expenses, the performance of the NASDAQ 100 Index over the long term. The fund offers low cost exposure to the stocks of large, non-financial U.S. and international companies listed on the Nasdaq Stock Market. |
| Russell Small Cap Index Fund | The fund seeks to match, as closely as possible, before expenses, the performance of the Russell 2000 Index over the long term. The fund offers |

broad, low cost exposure to the stocks of small U.S. companies.

**APPENDIX II**
**ANNUAL RETURNS**

The following chart reports the investment results[1] of the Plan funds through December 31 for each of the periods indicated. Of course, past performance is no guarantee that a fund will continue to perform the same way in the future.

| Fund Name | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|
| Dow Jones Target Today Fund | 6.14% | (3.17%) | 9.69% | 7.99% |
| Dow Jones Target 2010 Fund | 7.10% | (10.75%) | 12.76% | 9.19% |
| Dow Jones Target 2015 Fund | N/A | 16.35% | (15.95%) | 10.35% |
| Dow Jones Target 2020 Fund | 7.55% | (21.92%) | 19.65% | 11.81% |
| Dow Jones Target 2025 Fund | N/A | (26.70%) | 23.80% | 13.53% |
| Dow Jones Target 2030 Fund | 7.84% | (31.38%) | 27.99% | 15% |
| Dow Jones Target 2035 Fund | N/A | (34.05%) | 31.51% | 16.09% |
| Dow Jones Target 2040 Fund | 7.98% | (36.06%) | 30.21% | 16.97% |
| Dow Jones Target 2045 Fund | N/A | (35.50%) | 30.21% | 17.07% |
| Dow Jones Target 2050 Fund | N/A | (35.78%) | 33.34% | 17.25% |
| U.S. Bond Index Fund | 7.03% | 5.58% | 6.19% | 6.53% |
| S&P 500 Index Fund | 5.52% | (36.94%) | 26.67% | 15.13% |
| S&P Midcap Index Fund | 8.03% | (36.09%) | 37.24% | 26.57% |
| Russell Small Cap Index Fund | (1.72%) | (33.61%) | 26.77% | 26.66% |
| EuroPacific Growth Fund | 19.22% | (40.38%) | 39.53% | 9.76% |
| Emerging Markets Equity Fund | 34.72% | (49.53%) | 73.88% | 22.63% |
| NASDAQ 100 Index Fund | 18.89% | (41.73%) | 54.79% | 20% |

**PROOF OF SERVICE**

I, Toby Emerson, the undersigned, hereby certify and declare:

I am over the age of 18 years and am not a party to the within cause. I am employed in the office of a member of the bar of this Court, at whose direction this service was made. My business address is Bartko, Zankel, Bunzel & Miller, One Embarcadero Center, Suite 800, San Francisco, California 94111.

On October 18, 2013, I served the true copy of the attached document(s) titled exactly:

- **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

on the interested parties in this action as follows:

__X__ **BY MAIL:** I am readily familiar with my employer's mail collection and processing practices, know that said mail is collected and deposited with the United States Postal Service on the same day it is deposited in the interoffice mail, and know that postage thereon is fully prepaid. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope(s) at Bartko, Zankel, Bunzel & Miller, One Embarcadero Center, Suite 800, San Francisco, California 94111, addressed, sealed and charges prepaid as follows:

Terry E. Sanchez, Esq.
Munger, Tolles & Olson
355 South Grand Ave.
Thirty-Fifth Floor
Los Angeles, CA 90071-1560

_____ **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the address designated below.

__X__ **BY MAIL AND ACKNOWLEDGEMENT OF RECEIPT OF SERVICE:** I am readily familiar with my employer's mail collection and processing practices, know that said mail is collected and deposited with the United States Postal Service on the same day it is deposited in the interoffice mail, and know that postage thereon is fully prepaid. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope(s) at Bartko, Zankel, Bunzel & Miller, One Embarcadero Center, Suite 800, San Francisco, California 94111, addressed, sealed and charges prepaid as follows:

| | |
|---|---|
| Wells Fargo Advisors Financial Network, LLC | Wells Fargo Advisors, LLC |
| c/o Agent for Service of Process | c/o Agent for Service of Process |
| Corporation Service Company | Corporation Service Company |
| 2711 Centerville Rd., Ste. 400 | 2711 Centerville Rd., Ste. 400 |
| Wilmington, DE 19808 | Wilmington, DE 19808 |

1.

2437.000/761430.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____ **BY FEDERAL EXPRESS:** I am readily familiar with my employer's practice for collection and processing of Federal Express courier service mail, and know that said Federal Express courier service mail is collected and deposited with a facility regularly maintained by Federal Express at San Francisco, California on the same day it is deposited in the interoffice mail. Following ordinary business practice, I placed for collection and delivery to Federal Express such envelope(s) at Bartko, Zankel, Bunzel & Miller, One Embarcadero Center, Suite 800, San Francisco, California   94111, addressed, sealed and charges prepaid, marked for next business day delivery as follows:

_____ **BY FACSIMILE:**  On October 17, 2013 from my employer's facsimile machine telephone number (415) 956-1152, I transmitted a copy of said document(s) to the following addressee(s) at the following number(s), which is the number last given by that person on a document he or she has filed in this action and served on my employer. The transmission was reported as complete and without error, and a transmission report properly issued by the transmitting machine.

_____ **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on October 18, 2013 at San Francisco, California.

_____
Toby Emerson

2.

CERTIFIED MAIL

7005 1820 0007 1784 3799



UNITED STATES POSTAGE
PITNEY BOWES
$ 008.37⁰
02 1P
0000803869    OCT 18 2013
MAILED FROM ZIP CODE 94111

BARTKO
ZANKEL
BUNZEL

*A Professional Law Corporation*
One Embarcadero Center · Suite 800
San Francisco, CA 94111

TO:      Wells Fargo Advisors, LLC
         c/o Agent for Service of Process
         Corporation Service Company
         2711 Centerville Rd., Ste. 400
         Wilmington, DE 19808

te
2437.000

