1   William I. Edlund, State Bar No. 25013
    wedlund@bzbm.com
2   Robert H. Bunzel, State Bar No. 99395
    rbunzel@bzbm.com
3   Charles G. Miller, State Bar No. 39272
    cmiller@bzbm.com
4   Sony B. Barari, State Bar No. 243379
    sbarari@bzbm.com
5   BARTKO, ZANKEL, BUNZEL & MILLER
    A Professional Law Corporation
6   One Embarcadero Center, Suite 800
    San Francisco, California  94111
7   Telephone: (415) 956-1900
    Facsimile:  (415) 956-1152
8
    Attorneys for Plaintiff
9   KENNISON WAKEFIELD

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KENNISON WAKEFIELD, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO & COMPANY, WELLS FARGO ADVISORS, LLC, and WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, and DOES 1 through 20, <br><br> Defendants. | Case No. C 13-05053 LB <br><br> **NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:  February 6, 2014 <br> Time:  9:30 a.m. <br> Courtroom:  C, 15th Floor <br><br> The Hon. Magistrate Judge Laurel Beeler |

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF FACTS ...........................................................................1

III.    LEGAL STANDARD FOR REMOVAL ....................................................2

IV.     ARGUMENT ................................................................................................3

      A.   Plaintiff's Well-Pleaded Complaint Does Not Invoke Federal
          Question Jurisdiction Because It Does Not Involve Nor Rely
          on Federal Law ....................................................................................3

      B.   Plaintiff's Claims Are Not Completely Preempted by ERISA ...............4

          1.   The Plan Does Not Fall Within the Scope of ERISA ...................4

              a.   The Plan is Not an Employee Benefit Plan
                  Covered by ERISA ...........................................................5

              b.   The Plan is an Incentive/Bonus Plan Not
                  Covered by ERISA ...........................................................7

              c.   Well's Communications Characterize the Plan
                  as an Incentive (and Not Pension) Plan ...........................9

               d.   Courts have Explicitly Determined Wells'
                  Similar Plans Are Not Covered by ERISA ......................9

               e.   The Plan's Forfeiture Provisions Are
                  Inconsistent with ERISA ...............................................11

               f.   Defendant's "Top Hat" Argument Is
                  Inapposite and Unfounded .............................................12

               g.   The Plan's Throw-In "Applicable Law"
                  Subparagraph Does Not Bring the Plan Within
                  the Scope of ERISA ........................................................14

V.      CONCLUSION ...........................................................................................16

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

NOTICE OF MOTION AND MOTION TO REMAND
Case No. C 13-05053

**Page(s)**

<small>CASES</small>

*Aetna Health Inc. v. Davila*
542 U.S. 200 (2004)..............................................................................................4

*Alessi v. Raybestos-Manhattan, Inc.*
451 U.S. 504 (1981)............................................................................................11

*Beneficial Nat'l Bank v. Anderson*
539 U.S. 1 (2003)..................................................................................................3

*Borreani v. Kaiser Found. Hospitals*
875 F. Supp. 2d 1050 (N.D. Cal. 2012) ...............................................................2

*Callan v. Merrill Lynch & Co., Inc.*
2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) .............................................passim

*Caterpillar, Inc. v. Williams*
482 U.S. 386 (1987)..............................................................................................3

*Duggan v. Hobbs*
99 F.3d 307 (9th Cir. 1996) ...............................................................................12

*Ethridge v. Harbor House Rest.*
861 F.2d 1389 (9th Cir. 1988) .............................................................................3

*Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*
463 U.S. 1 (1983)..................................................................................................3

*Gaus v. Miles, Inc.*
980 F.2d 564 (9th Cir. 1992) ...............................................................................2

*Gilliam v. Nevada Power Co.*
488 F.3d 1189 (9th Cir. 2007) ......................................................................12, 13

*Hill v. Opus Corp.*
841 F. Supp. 2d 1070 (C.D. Cal. 2011) ...............................................................5

*In re Segovia*
404 B.R. 896 (N.D.Cal. 2009) *aff'd Segovia v. Schoenmann*, 408 F. App'x 61 (9th Cir.
2011) ............................................................................................................passim

*Kennedy v. Allied Mutual Insur. Co.*
952 F.2d 262 (9th Cir. 1991) ...............................................................................4

BARTKO ZANKEL BUNZEL

BARTKO · ZANKEL · BUNZEL · MILLER

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Luther v. Countrywide Home Loans Servicing, LP*
    533 F.3d 1031 (9th Cir. 2008) ............................................................................2

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*
    581 F.3d 941 (9th Cir. 2009) ..............................................................................4

*Metropolitan Life Ins. Co. v. Taylor*
    481 U.S. 58 (1987).................................................................................................4

*Moore-Thomas v. Alaska Airlines, Inc.*
    553 F.3d 1241 (9th Cir. 2009) ............................................................................2

*Murphy v. Inexco Oil Co.*
    (5th Cir. 1980) ....................................................................................................11

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*
    582 F.3d 1083 (9th Cir. 2009) ............................................................................2

*Segovia v. Schoenmann*
    408 F. App'x 61 ...................................................................................................9

*Vincenzo v. Hewlett-Packard Co.*
    2012 WL 4838442 (N.D. Cal. Oct. 10, 2012) ...............................5, 6, 7, 11

**STATUTES**

28 U.S.C. § 1441(a) ......................................................................................................2

28 U.S.C. § 1447(c) ......................................................................................................1

29 U.S.C. § 502(a) ...............................................................................................1, 4, 15

29 U.S.C. §§ 1002(2)(B)(3) and 1002(2)(A) ..........................................................5

29 U.S.C. § 1101(a) ...................................................................................................12

California Business & Professions Code § 16600 ...............................................3, 1

California Civil Code § 52.1 .......................................................................................3

California Labor Code § 206.5 ...................................................................................3

**OTHER AUTHORITIES**

26 C.F.R. § 1.401-1(b)(1)(i) .......................................................................................5

Ronald J. Cooke, ERISA Practice & Procedure, Second Ed. Vol. 1, § 2.2 ....................5

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 6, 2014, at 9:30 a.m., or as soon thereafter as the matter may be heard, before Magistrate Judge Laurel Beeler, in Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Kennison Wakefield ("Plaintiff") will and hereby does move, for an order remanding this action to the Superior Court for the County of Alameda, California, pursuant to 28 U.S.C. § 1447(c).

This motion is based on Defendants' failure to establish that this action is subject to federal matter jurisdiction because Plaintiff's well-pleaded complaint does not invoke any questions of federal law and is not completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Accordingly, Plaintiff respectfully requests that the Court grant this motion and remand this case.

This motion is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently-filed Declaration of Sony B. Barari and the exhibits thereto; the complete files and records of this action, the arguments of counsel; and such other evidence and arguments that the Court may properly consider.

DATED: November 26, 2013

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation

By: _____/s/ William I. Edlund_____
William I. Edlund / Robert H. Bunzel /
Charles G. Miller / Sony B. Barari
Attorneys for Plaintiff
KENNISON WAKEFIELD

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff moves to remand this matter to state court pursuant to 28 U.S.C. § 1447(c). Plaintiff initially filed this suit in California Superior Court against Defendants Wells Fargo & Company; Wells Fargo Advisors, LLC; and Wells Fargo Advisors Financial Network, LLC (collectively, "Wells") for Wells' illegal forfeiture of compensation account balances owed to Plaintiff under an incentive-based Performance Award Plan (the "Plan") (Dkt. 1, Exh. 2, Exh. A). Wells' forfeiture – based on Plaintiff's re-employment with a competitor of Wells in the financial services industry – is in direct violation of, among other state laws, California's Business & Professions Code, Section 16600.

Plaintiff's well-pleaded First Amended Complaint ("Complaint") (Dkt. 1, Exh. 2), on its face and consistent with the facts, alleges nine state law causes of action against Wells and raises no federal question of law.  The fundamental and only predicate for Wells' removal here is its erroneous assertion in its Notice of Removal of Civil Action Pursuant to 28 U.S.C. § 1441 ("Notice of Removal") (Dkt. 1) that Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA") and that this matter is thereby completely preempted by federal law.  (Notice of Removal, at 1).  Wells is wrong; the Plan – despite Wells' unfounded assertions to the contrary – is a straightforward incentive plan and *not* an employee benefits plan falling within the scope of ERISA.  Nor are Plaintiff's claims otherwise dependent upon ERISA or any other federal laws.  In short, Plaintiff's claims are not completely preempted by federal law and Plaintiff's well-pleaded state-law complaint cannot be converted into a federal suit merely through Wells' mischaracterization of the Plan as governed by ERISA.  With no outstanding federal question, the Court lacks federal subject matter jurisdiction in this action; Wells' removal is improper and this case should be remanded to state court for adjudication.

## II.    STATEMENT OF FACTS

Plaintiff was a former Financial Advisor ("FA") with Wells until August 2011, when he left at age 72.  (Complaint, ¶5).  During Plaintiff's time at Wells and its predecessor companies, he was a participant in the Plan, an incentive plan covering employees of Wells Fargo

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Advisors, LLC, that in its current iteration is called "The Wells Fargo Advisors, LLC, Performance Contribution and Deferral Plan." *Id.* ¶ 6. The Plan included "non-compete" provisions for the forfeiture of payments to be made under the Plan if a qualified FA left Wells and joined another financial services firm or worked in the financial services industry, during a three-year period from the time of departure from Wells. *Id.* ¶ 14. After leaving Wells, Plaintiff joined another financial services company, and Wells forfeited his accounts. *Id.* ¶¶ 5, 52.

Plaintiff filed this action in Superior Court for the County of Alameda, California, on September 30, 2013, alleging that Wells' forfeiture of account balances due to Plaintiff under the Plan – after Plaintiff joined a competing firm upon leaving Wells – constituted a violation of various state statutory and common laws prohibiting enforcement of non-compete restrictions. Plaintiff's Complaint asserts no federal law causes of action. Wells subsequently filed for removal of this action, based exclusively on the alleged federal preemption by ERISA of Plaintiff's state law causes of action.

## III.    LEGAL STANDARD FOR REMOVAL

Removing a state court action to federal court is not appropriate where the federal court would not have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). In evaluating the propriety of removal, courts must strictly construe the removal statute against finding jurisdiction. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal.") As such, any doubts regarding the propriety of the removal favor remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Borreani v. Kaiser Found. Hospitals,* 875 F. Supp. 2d 1050, 1054 (N.D. Cal. 2012) ("Where doubt exists regarding the right to remove an action, it should be resolved in favor of remand to state court.") (citing *Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir. 2003)).

Moreover, Wells, as the party invoking removal, bears the burden of establishing federal subject matter jurisdiction. *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("The presumption against removal means that the defendant always has the

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

burden of establishing that removal is proper.") (citation and internal quotation marks omitted).

Wells has not carried and cannot carry this burden.

## IV.    ARGUMENT

### A.    Plaintiff's Well-Pleaded Complaint Does Not Invoke Federal Question Jurisdiction Because It Does Not Involve Nor Rely on Federal Law

When there is no diversity of citizenship, "only cases within the district court's original 'federal question' jurisdiction may be removed from state to federal court." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (citation omitted).  Federal question jurisdiction must appear on the face of the complaint, and a defendant may not remove a case to federal court unless the complaint itself establishes that a right created by the Constitution or laws of the United States is an essential element of the plaintiff's cause of action.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-11 (1983).  Thus, as a general rule, a case is not removable (absent diversity jurisdiction) where, as here, the complaint does not affirmatively allege a federal claim.  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 2 (2003).

Plaintiff's Complaint alleges nine causes of action, each of which is based exclusively on state law and does not rely in any way upon the Constitution, laws, or treaties of the United States.  (Complaint ¶¶ 49-98).  Plaintiff's Complaint specifically alleges, along with common law causes of action, state statutory violations including California Business & Professions Code § 16600, California Civil Code § 52.1, and California Labor Code § 206.5.  *Id.* These are the full extent of Plaintiff's allegations.  *Id.*

To support its removal, Wells mischaracterizes the action as one that "arises under the laws of the United States," specifically, ERISA.  (Notice of Removal ¶ 2).  The Complaint, however, makes no claims under the aegis of ERISA.  To the contrary, Plaintiff's Complaint explicitly pleads with specific and detailed allegations that the Plan is *not* covered by ERISA and that Wells has fraudulently attempted to camouflage the Plan as an ERISA plan to avoid answering for its alleged wrongful conduct, knowingly and fraudulently forfeiting millions of dollars of

-3-

compensation earned by plaintiff and other FAs. (Complaint at 1). The Complaint is clear - its claims do not arise under ERISA or any other federal law.

**B.    Plaintiff's Claims Are Not Completely Preempted by ERISA**

Because Plaintiff's claims do not rely upon federal law, Wells must establish that Plaintiff's state law claims are somehow exempted from the well-pleaded complaint rule. Specifically, to remove this case on the basis of ERISA, Wells must show that Plaintiff's state law claims are "completely preempted" by ERISA. *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67-68 (1987). Complete preemption is a narrow exception to the well-pleaded complaint rule: if a federal statute completely preempts state law, an action may be removed even if the complaint itself asserts no federal claims. *Id.* Since Plaintiff's Complaint does not assert any claims under ERISA, removal would only be appropriate if Plaintiff's state law claims were completely preempted by ERISA § 502(a). *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-45 (9th Cir. 2009). They are not.

The Ninth Circuit has set forth careful guidelines for determination of complete preemption: a state law claim is preempted by § 502(a) only where: (1) an individual could have brought the same action under ERISA § 502(a); *and* (2) there exists no other independent legal duty that is implicated by a defendant's actions. *Id.* at 946; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Wells' conclusory assertions of ERISA preemption flunk both guidelines.

Simply, the Plan is not a plan covered by ERISA. Plaintiff's Complaint therefore could not have been brought under ERISA § 502(a); nor can the legal duties implicated by Wells' actions be wholly dependent on ERISA. Consequently, Plaintiff's state law claims are not preempted under § 502(a) and remand is required.

**1.    The Plan Does Not Fall Within the Scope of ERISA**

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kennedy v. Allied Mutual Insur. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Wells labels Plaintiff's

-4-

factual allegation that the Plan is an incentive plan and not an employee pension benefit plan under

or subject to ERISA as a "legal conclusion." (Notice of Removal ¶ 4). However, contriving its

own conclusory assertion of ERISA-coverage, Wells ignores the provisions of the Plan itself; its

own descriptions of the Plan; the circumstances surrounding the Plan; and the controlling

authorities outlining standards for determination of ERISA coverage. Whether in terms of its

provisions or in light of its broader context, the Plan here is not an employee pension benefit plan

and falls outside the parameters of ERISA's coverage.

### a. The Plan is Not an Employee Benefit Plan Covered by ERISA

Generally, only "employee benefit plans" which include "employee pension benefit

plans" are covered by ERISA.[1] California courts have consistently held that bonus and incentive

plans that do not overtly "have a retirement purpose" or "provide a systematic deferral of

compensation" do not qualify as an employee pension benefit plan under ERISA. *See Callan v.

Merrill Lynch & Co., Inc.*, 2010 WL 3452371 (S.D. Cal. Aug. 30, 2010); *see also, Hill v. Opus

Corp.*, 841 F. Supp. 2d 1070, 1081 (C.D. Cal. 2011); *In re Segovia*, 404 B.R. 896, 916-923 (N.D.

Cal. 2009) *aff'd Segovia v. Schoenmann*, 408 F. App'x 61 (9th Cir. 2011); *Vincenzo v.

Hewlett-Packard Co.*, 2012 WL 4838442 (N.D. Cal. Oct. 10, 2012) ("In other words, a plan

constitutes a pension plan under ERISA to the extent that, either by its express terms or as a result

of surrounding circumstances, the plan, fund or program provides retirement income to employees,

---

[1]     The standard treatise, Ronald J. Cooke, 1 *ERISA Practice & Procedure* § 2.2, p. 2-3 (2d ed. 1989), Plans Covered, states that ERISA covers "only" "employee benefit plans" which include "employee pension benefit plans" and "employee welfare plans," "all of which are statutorily defined." (29 U.S.C. §§ 1002(2)(B)(3) and 1002(2)(A).) The Wells Plan is neither. Wells does not suggest the Plan is an "employee welfare plan" and ERISA covers only a statutorily defined "employee pension benefit plan." The statute requires that a "pension benefit" plan be "primarily" for employees' retirement. A covered plan must be "[P]rimarily to provide systematically for the payment [by employer] of definitely determinable benefits to his employees over a period of life, usually for life, after retirement" (26 C.F.R. § 1.401-1(b)(1)(i)); R. Cooke, *id*. at § 2.4 pp. 2-6 to 2-7. The range of programs and plans that are covered under the statutorily defined "employee pension benefit plan" is broad; stock option and profit sharing plans, including "top hat" plans are some of the categories of plans that may be covered by ERISA; but the statute requires plans to be an "employee pension benefit plan" to be covered. (*Ibid.*, pp. 2-6 to 2-11.)

-5-

or results in a deferral of income by employees for a period extending to the termination of covered employment or beyond." (internal quotations omitted)).

Wells' Plan does neither. Not only does it contemplate distribution of benefits prior to retirement (e.g., annual installments), but is generally contingent upon an employee's *continued* employment with Wells, not their retirement. As the Plan describes its vesting and distribution of benefits:

> The vesting schedule applicable to each performance award will be structured in the form of (i) a cliff vesting formula, pursuant to which the entire subaccount to which that award is credited will vest upon the participant's continuation in employee status for a specified period following the close of the plan year to which that subaccount relates or (ii) an installment vesting schedule pursuant to which the subaccount will vest in a series of two or more successive equal annual installments over a period of continued employee status following the close of the plan year to which that subaccount relates . . .

(Plan at 6).

> [T]he vested balance of each of your performance award and special award subaccounts will become due and payable as follows: (i) If the subaccount vests pursuant to a cliff vesting schedule, then that subaccount will be paid in a lump sum on the thirtieth (30th) day following the vesting date or as soon after that scheduled payment date as administratively practicable . . . (ii) If the subaccount vests in a series of installments, then the portion of the subaccount which vests on each applicable vesting date will be paid on the thirtieth (30th) day following that vesting date or as soon after that scheduled payment date as administratively practicable . . .

*Id.* at 9. In other words, the Plan's deferral of income does not primarily provide retirement income to employees, nor does it result in a deferral of income extending to the termination of employment or beyond. As such, the Plan does not meet the general prerequisite that only employee pension benefit plans are covered by ERISA and cannot constitute such a plan here for purposes of ERISA preemption.[2]

---

[2] Nor do the surrounding circumstances of the Plan constitute a pension plan. Courts have recognized that in limited situations a de facto pension plan may be created by "surrounding circumstances," when a plan's administration effectively results in primarily providing retirement income, or results in the deferral of income to termination or beyond, or if communications to participant's suggest either. *Vincenzo*, at *4 (citing Dept. of Labor ERISA Opinion Letter 90-17A, 1990 WL 263441, at *2). However, none of these circumstances are present here.

NOTICE OF MOTION AND MOTION TO REMAND
Case No. C 13-05053

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Rather than an employee pension benefit plan, the Plan is an incentive or bonus plan that is statutorily and judicially excluded from ERISA. *See, e.g., Vincenzo*, at *3 ("The Department of Labor ('DOL') has issued regulations limiting the scope of ERISA pension plans by excluding bonus programs defined as 'payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.'") (quoting 29 C.F.R. § 2510.3-2(c)).

Accordingly, a plan designed and purposed to incentivize FAs with special or performance awards to generate more revenue for Wells Fargo is not a "pension benefit plan" within the scope of ERISA. *See, e.g., Callan v. Merrill Lynch & Co., Inc.*, 2010 WL 3452371, at *8 ("Courts have consistently held that plans created to incentivize performance and not provide retirement income . . . are not ERISA plans."). As alleged in the Complaint, the Plan - along with its prior iterations - is correctly categorized as an "incentive compensation plan," where FAs "earned incentive compensation bonus accounts," and was created by Wells as "an incentive plan as an integral part of the compensation package" paid to FAs. (Complaint at 1, 3).

The incentive nature of the Plan is unmistakable. The Plan itself declares:

> "Under the Plan, one or more individuals may be credited with performance awards contingent upon the individual's attainment of pre-established performance objectives and their completion of designated service periods or special awards designed to serve as a meaningful incentive for the participant to continue in the employ of the participant's participating employer."

(Plan at 1). It reiterates: "The purpose and intent of the awards made to you under the Plan are to assure your continued service and to encourage you to contribute to the long-term growth and financial success of your participating employer." *Id.* at 6. These are plainly incentives, not retirement benefits, and California courts have found such objectives in similar plans for financial advisors to be dispositive of any claimed ERISA coverage:

-7-

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1

2

> By its express terms, the FACAAP [Financial Advisor Capital Accumulation Award Plan] does not have a retirement purpose or provide a systematic deferral of compensation. Rather, it is clear the FACAAP is intended merely as a bonus program to award top performing employees and provide financial incentive for employees to remain with Merrill Lynch and improve their performance there. There is nothing in the FACAAP that would allow a reasonable person to calculate or determine the benefits of the plan or the procedure for receiving benefits, as those matters are left to the sole discretion of Merrill Lynch. Additionally, no employee is guaranteed awards under the FACAAP; he or she is given awards only according to the company's assessment of his or her contribution to the financial well-being of the company. As such, the FACAAP does not qualify as an "employee pension benefit plan" under ERISA.

3

4

5

6

7

8

9 *Callan*, at \*8. The *Callan* court found another similar plan, overtly "intended to be unfunded and

10 maintained primarily for the purpose of providing long-term incentive compensation, subject to

11 certain conditions, to a select group of financial advisors, who remain in the employ of the

12 Company until completion of the period of service specified . . ." to also fall outside the scope of

13 ERISA:

14

> Also similar to the FACAAP, the Growth Award Plan provides that awards "will be established periodically by the Advisory Division," "may vary from Performance Period to Performance Period and according to the type of performance," and "will generally be stated as an amount equal to a percentage of achievement against established goals during the Performance Period." Similar to the FACAAP, therefore, the Court finds that the Growth Award plan is intended merely as a bonus program for top performing employees and there is nothing in the plan that would allow a reasonable person to calculate or determine the benefits of the plan or the procedure for receiving benefits. Accordingly, the Court finds the Growth Award Plan does not have a retirement purpose or provide a systematic deferral of compensation, and thus does not qualify as an "employee pension benefit plan" under ERISA.

15

16

17

18

19

20

21 *Id.* at \*9 (internal citations omitted). The Wells Plan here is substantially similar - its clear

22 purpose is to provide an incentive and bonus program for Wells' FAs, not retirement benefits,

23 Wells cannot here reinterpret the Plan as a "pension benefit" plan for its present purposes of

24 bringing plaintiff's Complaint within the scope of ERISA.

25

26

27

28

-8-

### c. Well's Communications Characterize the Plan as an Incentive (and Not Pension) Plan

Wells' communications to its FAs confirm the incentive, non-pension, nature of the Plan. (Complaint ¶ 36). For instance, Wells distributed to all of its FAs yearly brochures describing the "Philosophy" of its "Financial Advisor Compensation Plan" as "rewarding productivity and growth," with a "transparent formula" that "Credits Financial Advisors based on overall revenue generated" and "Encourages Financial Advisors to enjoy a long-term relationship with the firm." (*See e.g.*, Private Client Group 2010 Financial Advisor Compensation Plan at 1; attached to Declaration of Sony B. Barari ("Barari Decl.") as Exh. A). Wells further characterizes its deferred compensation plan as comprised by a "Company-provided performance award" and providing FAs "the opportunity to receive significant additional monthly compensation." *Id.* at 3-4; *see also* Private Client Group 2009 Financial Advisor Compensation Plan. at 3; Barari Decl., Exh. B).

Meanwhile, the brochures contain no reference whatsoever to ERISA controlling the Plan, nor do they in any way characterize the plans as employee pension benefit plans within the reach of ERISA. In short, whether on its face or in terms of Wells' surrounding treatment, the Plan was designed to provide incentive compensation as part of a single compensation structure - and *not* primarily for the retirement purposes that would render it a "pension benefit plan" covered by ERISA.

### d. Courts have Explicitly Determined Wells' Similar Plans Are Not Covered by ERISA

This Court - and as confirmed by the Ninth Circuit - has directly held that similar incentive plans promulgated by Wells are not, and cannot be, covered by ERISA. *See In re Segovia*, 404 B.R. 896, 922; *Segovia v. Schoenmann*, 408 F. App'x 61 (affirming). In *Segovia*, this Court carefully construed a Wells long-term incentive compensation plan ("LTICP") and determined that it did not constitute an employee benefit plan within the meaning of ERISA. *In re Segovia*, 404 B.R. 896, 922. Significantly, the Court's rationale was that the LTICP was "not covered by ERISA" because it did not, "either expressly, or based on the surrounding

-9-

circumstances, possess a retirement purpose, nor does it defer income as required under the statute." *Id.* (stating: "[T]he plan's purpose is evident and express. Its stated purposes are: (1) to motivate key employees to produce a superior return; and (2) to facilitate recruiting and retaining talented executives.") (internal quotations omitted). The Court concluded that the plan was not "for the purpose of providing retirement income, but rather as an incentive plan designed to provide a financial incentive for employees to remain with Wells Fargo and improve their performance there." *Id.* The Court concluded that "even if the LTICP may have under some circumstances incidentally provided for retirement, or allowed participants to defer income, that was not its principal purpose. For that reason alone, the plan is not covered by ERISA." *Id.* Furthermore, the Court found it telling that "[t]here is no evidence that Wells Fargo promoted the LTICP as a retirement plan" and that there was "no evidence that Wells Fargo administered the plan in a way that had the effect of providing retirement income to participants." *Id.*

This Court's *Segovia* analysis is directly applicable to this action. The LTICP was, like the Plan here, "part of an individual competitive compensation package" for "highly compensated" executives. *Id.* at 902-03. Like the *Segovia* LTICP, the Plan was engineered not principally for retirement purposes, but to incentivize Wells' FAs. Indeed, the stated purposes of the LTICP and this Plan are effectively indistinguishable: the LTICP's purpose was to "motivate key employees to produce a superior return" and "to facilitate recruiting and retaining talented executives." *Id.* The "purpose and intent" of the Plan here is to "assure [FAs'] continued service and to encourage [FAs] to contribute to the long-term growth and financial success of [their] participating employer." (Plan at 6).

The Wells Executive Vice President of Compensation and Benefits testified in *Segovia* that the LTICP was not "in any way, shape or form a retirement benefit" and was not subject to ERISA. (*See* Deposition of Paula S. Roe ("Roe Depo."), at 18:14-21; Barari Decl., Exh. C). Based on the testimony of the Wells executives and the provisions in the Plan, the Court ruled that the LTICP could be "no clearer that its purpose is to incentivize and to retain employees" and was not an ERISA plan. *In re Segovia*, 404 B.R. 896, 911.

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL TULLY

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Like Wells' LTICP, the Plan here is not, and cannot be, covered by ERISA because such incentive plans are not "employee pension benefit plans." *Id.* at 916-20 (citing an unbroken line of authorities from the Third, Fifth, Eighth, and Tenth Circuits). This Plan, like the several others analyzed or cited in *Segovia*, is "designed to provide current rather than retirement income" to the employee and "not designed for retirement purposes" as required for coverage by ERISA (*Id.* at 917 quoting from *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 575-76 (5th Cir. 1980)). Consequently, it does not fall within the scope of ERISA, and Wells cannot create federal jurisdiction by continuing to camouflage the Plan as being an ERISA Plan.

### e. The Plan's Forfeiture Provisions Are Inconsistent with ERISA

The very fact that this action arises out of Wells' forfeiture of account balances owing to Plaintiff and others similarly situated places the Plan outside the ambit of ERISA. The Supreme Court has specifically held that, "ERISA establishes that '[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age.'" *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510-11 (1981) (quoting 29 U.S.C. § 1053(a)). This Court has accordingly found that plans containing such terms "which are contrary to the establishment of a pension plan" do "not constitute an ERISA pension plan." *Vincenzo*, at *3. Specifically, forfeiture provisions "are inconsistent with the objective of an ERISA pension plan, which is to provide nonforfeitable income for retirement." *Id.* (citing *Alessi*, 451 U.S. 504 at 510). The Plan here contemplates such forfeiture:

> "Each plan subaccount established for you will be subject to a vesting schedule, and you will forfeit each such subaccount, including the investment earnings credited to that subaccount, if you voluntarily leave the Company, or you are terminated for cause, before that subaccount vests."

(Plan at 12). Furthermore, the Plan notes that upon retirement:

> "The vested balance will be distributed pursuant to the original vesting schedule of your account . . . provided you meet any non-compete requirements and/or program eligibility requirements and deliver any client transition, and release agreements required by your participating employer."

-11-

NOTICE OF MOTION AND MOTION TO REMAND
Case No. C 13-05053

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO DANIEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

(*Id.* at 11). These forfeiture provisions and contingencies predicating the distribution of benefits, on a Plan participant's future non-competition, are contrary to the objectives of an ERISA pension plan, and place this action outside ERISA. Indeed, the underlying facts giving rise to this suit - with causes of action based on Wells' forfeiture of Plaintiff's account balances - establishes that this action does not, and cannot arise under ERISA.

### f. Defendant's "Top Hat" Argument Is Inapposite and Unfounded

Finally, Wells' assertion that the Plan is a so-called "top hat" plan covered by ERISA is inadequate and unfounded. First, as described above, the Plan is *not* an "employee benefit plan" within the meaning of ERISA. ERISA's top hat provision specifically applies only to an "employee benefit plan" that otherwise meets certain conditions, and is therefore, as an initial matter, inapplicable here to the incentive-based Plan. *See* 29 U.S.C. § 1101(a). ERISA generally exempts top hat plans, which comprise a subset of ERISA employee benefit plans, "from the fiduciary, funding, participation and vesting requirements applicable to other employee benefit plans." *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996); *see also Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1193 (9th Cir. 2007). Consequently, Wells' argument that the Plan is a top hat plan and would therefore fall under ERISA is inapposite: a plan that is not otherwise governed by ERISA would not be brought within its scope merely by meeting ERISA's preconditions for certain exemptions for ERISA-covered plans. Any such argument is erroneous.

Wells' Executive Vice President of Compensation and Benefits acknowledged as much in *Segovia*, testifying that a similarly situated plan to that here was an incentive plan and therefore "not a benefit plan," and that this precluded it from constituting a top hat plan:

> Q    OK. And, again, just to clarify, it's also not a top-hat plan?
> A    Correct.
> Q    None of the awards would fall under top-hat plan awards?
> A    Correct.
> Q    And why do you say this is not a top-hat plan?
> A    Because it's not a benefit plan.

(Roe Depo., at 41:18-25; attached to Barari Decl., Exh. C). While the plan there included "highly compensated individuals" and "top officers, top executives," Wells admitted that this did not make

-12-

NOTICE OF MOTION AND MOTION TO REMAND
Case No. C 13-05053

BARTKO ZANKEL BUNZEL
BARTKO DANIEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  it a top hat plan and the Internal Revenue Code would not refer to it as a top hat plan.  *Id.* at

2  40:20-41:5.  As detailed extensively above, this Plan is likewise not an ERISA plan; whether or

3  not it is a top hat plan is irrelevant to this analysis.

4  Even assuming, contrary to the statute and the authorities, that a non-ERISA plan

5  which was consistent with the definition of a top hat plan was automatically transformed into a

6  benefit plan covered by ERISA, Wells still fails to establish that the Plan here constitutes a top hat

7  plan.  ERISA defines a top hat plan as one "which is unfunded and is maintained by an employer

8  primarily for the purpose of providing deferred compensation for a select group of management or

9  highly compensated employees." *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1192-93 (9th Cir.

10  2007) (quoting 29 U.S.C. § 1101(a)(1)).  However, the great majority of the workforce of Wells

11  Fargo Advisors, LLC ("Wells Fargo Advisors") were FAs in the universe of employees who could

12  be eligible to participate in the Plan:  Wells Fargo Advisors employed 15,194 FAs in 2011; 15,134

13  FAs in 2012; and 15,285 FAs in 2013 (as of September 30).  (*See* Barari Decl., ¶ 5, Exh. D).  Even

14  if Wells' assertion that Wells Fargo Advisors employed a total of 28,055 individuals in 2011

15  (Dkt. 1, Exh. 5, ¶ 3) is accurate, the roughly 15,000 FAs who would be *eligible* to participate in the

16  Plan constitute well over 50% of the total workforce of Wells Fargo Advisors.

17  California courts have noted that, "Although there is no bright-line rule on what

18  constitutes a 'select group of management of highly compensated employees,' plans that *limit*

19  *participation* to *15% or less* of the workforce are treated as top hat plans." *Callan v. Merrill*

20  *Lynch & Co., Inc.*, 2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) (emphasis added).  The Plan here

21  does not limit participation to less than 15% of the workforce, but *extends* it to at least 50% of

22  Wells Fargo Advisors' workforce.  While the Plan administrator has "absolute discretion" in

23  selecting employees who participate in the Plan, it is dependent on the FA's "attainment of

24  pre-established performance objectives."  The number of *eligible* employees is a much larger

25  universe than those FAs who actually participate in the Plan awards.  Indeed, this is the Plan's

26  purpose; to motivate FAs to work harder to become participants in the Plan's incentive

27  compensation.  Wells' assertion that "approximately 12.9%" of Wells Fargo Advisors' employees

28  actually participated in the Plan in 2011 is keyed to those who "*participated* in the Plan" - not the

-13-

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

employees eligible to participate and is therefore inconclusive, if not misleading. *Id.* (emphasis added). Either way, it does not qualify the Plan as a top hat plan under ERISA.

Even if it did meet the requirements for a top hat plan under the statute and authorities, this fact alone would not substantiate the existence of an ERISA plan given that the Plan is not governed by ERISA in the first place. Such a deficiency cannot be cured by a fallacious argument touting the plan's ERISA-exempting qualities.

> g. **The Plan's Throw-In "Applicable Law" Subparagraph Does Not Bring the Plan Within the Scope of ERISA**

To achieve its goal of attempting to create federal jurisdiction, Wells artfully ignores the overwhelming language of the Plan and its surrounding circumstances in reciting a conclusory tail-end throw-in sentence of the Plan to advocate the applicability of ERISA to the Plan. (Notice of Removal ¶¶ 3, 5). As detailed above, the language of the Plan itself outlines an incentive and bonus program that falls well outside the scope of a traditional employee pension benefit ERISA plan.[3] Unsurprisingly, the Plan itself makes no mention whatsoever of comprising

---

[3] Among other things, the Plan states that it provides an opportunity to defer a "portion of their incentive-based compensation" and give employees "the opportunity to earn additional incentive compensation contingent upon their attainment of pre-established performance objectives and their completion of designated service periods." (Plan at 1). As an added incentive, some FAs will be "credited with special awards under the Plan designed to serve as a meaningful incentive for them to continue in the employ of their participating employers" *Id.* Completion of "designated periods of service and/or pre-established performance objectives" would be necessary. *Id.* All of the remaining provisions in the Plan, and the prior iterations, speak to incentives and bonuses: The Plan Administrator has "discretionary authority to determine participants eligible under the Plan." *Id.* A participant may defer distribution of "his or her performance award sub-account or special award sub-account" for certain periods. *Id.* at 2. A "performance award" is "an incentive bonus credited to a participant's Plan account in an amount based on the participant's performance relative to the performance goals and objectives established for him or her for the plan year." *Id.* at 3. Plan accounts are maintained by Wells for each participating employee "to which your performance or special awards (if any) under the Plan" are to be credited. *Id.* The Plan Administrator has "absolute discretion" in selecting employees to participate and determining "the terms and conditions of any awards for which they may qualify" *Id.* at 4. Performance Awards are credited "on the bases of performance relative to the goals and objectives established for that award." *Id.* In addition to Performance Awards, the Plan Administrator may make "special awards," including awards as a "recruitment vehicle to attract new employees." *Id.* The "purpose and intent of the awards made to you under the Plan are to assure your continued service and to encourage you to contribute to the long-term growth and financial success" of Wells. *Id.* at 6. And Performance Awards and Special Awards sub-accounts are due and payable in accordance with the Plan terms. *Id.* at 9.

-14-

NOTICE OF MOTION AND MOTION TO REMAND
Case No. C 13-05053

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

an employee pension benefit plan, of being primarily intended for a retirement purpose, of systematically deferring income beyond the end of employment, nor even of being a "top hat" plan.[4] However, after over 9,000 words of type in Times New Roman font, size 9, single spaced over 14 pages, expressly outlining a patently non-ERISA incentive and bonus plan, the Plan baldly asserts that it is "an unfunded deferred compensation arrangement for a select group of management and other highly compensated persons, and all rights under the Plan will be construed, administered and governed in all respects in accordance with the provisions of [ERISA] . . ." (Plan at 14). Wells seizes upon this clause for its characterization of the Plan as a top hat plan and its conclusion that because the " . . .Plan itself explicitly states that it is a plan subject to ERISA, Plaintiff's claims are completely preempted by ERISA and give rise to a right of removal." (Notice of Removal ¶ 5).

Wells' argument is unconvincing and its novel theory cannot overturn the inherent intent and effect of the Plan. The pervasive unequivocal language of the Plan itself details an incentive and bonus plan falling squarely outside the scope of ERISA, and a single sentence purporting to transform the Plan - despite all law, reason, and evidence to the contrary - cannot prevail. As courts have duly noted, such language alone is inconclusive to establish, for instance, the existence of a top hat plan. *See, e.g., Callan*, at *12 ("A plan, however, cannot merely state it complies with ERISA's top hat exemptions in order to qualify thereunder.") Nor can it assert the applicability of ERISA when, within the same section, the Plan states that it "is *not* subject to the provisions of [ERISA], as amended, except for the claims procedures and enforcement provisions of Part 5 of Title I of ERISA. In addition, the Plan is *not* a retirement plan qualified under Code Section 401(a)." (Plan at 14) (emphasis added). Wells cannot simultaneously disclaim portions of ERISA and adopt others as controlling where convenient. Neither the face of the Plan, nor any surrounding circumstances, suggest the Plan as an employee benefit plan or a top hat plan that

---

[4] None of the prior iterations of the Plan as represented by Edwards or Wachovia in their brochures contain any reference to a "top hat" plan. (Barari Decl., Exhs. A-B). Nowhere in the Plan itself are there any words specifically connoting a "top hat plan;" that phrase is not used; and there is no statement that the Plan is an "employee pension benefit plan" or a plan designed in any way to be other than an incentive bonus plan created for and designed to provide a financial incentive for employees to remain with Wells Fargo and improve their performance.

NOTICE OF MOTION AND MOTION TO REMAND
Case No. C 13-05053

might fall within the scope of ERISA - simply declaring that ERISA applies cannot provide a foundation for the contention itself.

## V.  CONCLUSION

Because Wells has failed to meet its burden of establishing federal subject matter jurisdiction, and because of the presumption against removal, Plaintiff respectfully requests that this action be remanded to state court.

DATED:  November 26, 2013

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation

By: _____ */s/ William I. Edlund*_____
William I. Edlund / Robert H. Bunzel /
Charles G. Miller / Sony B. Barari
Attorneys for Plaintiff
KENNISON WAKEFIELD