# EXHIBIT C


Page 1

1     IN THE UNITED STATES BANKRUPTCY COURT
      FOR THE NORTHERN DISTRICT OF CALIFORNIA
2               SAN FRANCISCO DIVISION
3
4            Case No.: 06-30387-TEC
                 Chapter 7
5     -------------------------------------
      In Re:
6
      Maria O. Segovia,
7
          Debtor.                    **COPY**
8     -------------------------------------
9
10
11
12
13
14
15
      -------------------------------------
16          TELEPHONIC DEPOSITION OF
                 PAULA S. ROE
17    -------------------------------------
18
19
20
21
22
23
24   DATE TAKEN: 10/04/07   BY: CHRISTINE M. CLARK,
                    RPR
25

Benchmark Reporting Agency
612.338.3376

EXHIBIT 10

```
 1    A P P E A R A N C E S:
 2    GOLDBERG, STINNETT, MEYERS & DAVIS, P.C.
      Suite 2900
 3    44 Montgomery Street
      San Francisco, California  94101
 4    Phone:  415.362.5045
      Fax:  415.362.2392
 5
      By:  Daniel M. Linchey
 6       For E. Lynn Schoenmann, Trustee
         Appearing Telephonically
 7
 8    NEAL H. KONAMI, ESQ.
      Suite 1900
 9    Oakland, California  94607-4098
      Phone:  510.891.7005
10    Fax:  510.891.7006
      Email:  nhk111730@sbcglobal.net
11
      By:  Neal H. Konami
12       For Maria Segovia, Debtor
         Appearing Telephonically
13
14    SEVERSON & WERSON, P.C.
      Suite 2600
15    One Embarcadero Center
      San Francisco, California  94111
16    Phone:  415.398.3344
      Fax:  415.956.0439
17    Email:  dhc@severson.com
18    By:  Donald H. Cram, III
         For Wells Fargo & Co., Creditor
19       Appearing Telephonically
20
      WELLS FARGO LAW DEPARTMENT
21    Wells Fargo Center
      Sixth and Marquette Avenue
22    Minneapolis, Minnesota  55479
      Phone number:  612.667.4611
23    Fax number:  612.667.5098
24    By:  Susan E. Flint, Managing Counsel
25    Also Present:
```

1   an employee?
2   A   In general terms, are you asking like why don't
3       some people get them?
4   Q   Correct. In general terms, why are they granted
5       options?
6   A   Okay. They're viewed as part of an individual's
7       competitive compensation package. So that, you
8       know, they're viewed as part of an executive's
9       compensation package.
10  Q   Okay. Did Miss Segovia have to be an executive
11      at the time these grants were made?
12  A   I don't know the circumstances under the former
13      Wells Fargo.
14  Q   Okay.
15  A   After the merger, when I was involved, yes, they
16      were granted to what we deem to be executives of
17      the company.
18  Q   Okay. And were the plan 85 grants, were those
19      done after the merger?
20  A   Yes. You can see the date there, 2/23/1999 is
21      the first one.
22  Q   Okay. Thank you. The third column it says
23      option type and the first entry says ISO. What
24      does the ISO refer to?
25  A   It refers to an incentive stock option.

Paula S. Roe - 10/4/2007
In Re: Maria O. Segovia, debtor

Page 18

1      retired in order to exercise the stock options?
2   A  No.
3   Q  She, in fact, as indicated on Exhibit 1, did at
4      three different times exercise the stock options?
5   A  Correct.
6   Q  Up through 2004?
7   A  Correct.
8   Q  What are the circumstances, under the plan, that
9      Maria Segovia or any other employee granted such
10     options would lose such options?
11  A  If you cease employment, other than being
12     eligible for some period of time due to death,
13     disability or retirement.
14  Q  Are the stock options granted under the long-term
15     incentive compensation plan in any way, shape or
16     form a retirement benefit?
17  A  No.
18  Q  Are the stock options granted under the long-term
19     incentive compensation plan subject at all to
20     ERISA, the Employee Retirement Security Act?
21  A  No.
22  Q  Is the long-term incentive compensation plan for
23     the stock options granted under an employee stock
24     ownership plan?
25  A  No.

Paula S. Roe - 10/4/2007
In Re: Maria O. Segovia, debtor

Page 31

1    you'd make about why this is a form of deferred
2    compensation to participants?
3        MR. CRAM: Objection. She didn't say
4    it was a form of deferred compensation.
5    She said there were elements.
6  Q What are the elements of, other elements of
7    deferred compensation are there?
8        MS. FLINT: That was Don who objected?
9        MR. CRAM: Correct.
10 Q Miss Roe, I just wanted you to go back through
11   some rights for us. What elements of the LTICP
12   are the nature of deferred compensation?
13       MR. CRAM: Again I object. She didn't
14   testify that this was deferred
15   compensation. She said that there was
16   certain elements that mirrored deferred
17   compensation.
18       MR. KONAMI: Okay.
19 A We have deferred comp.
20 Q What are those elements?
21 A We have a deferred compensation plan. This is
22   not a deferred compensation plan. This is a
23   long-term incentive comp. plan.
24 Q Okay. And what is the difference?
25 A Our deferred compensation plan involves employee

1   deferrals of their compensation to some point in
2   the future.
3   Q So we're talking about money only?
4   A We're talking about salary and/or bonuses.
5   Q Okay. And, as far as you're concerned, deferred
6   compensation would not have -- would not include
7   nonmonetary compensation or benefits?
8          MS. FLINT: Counsel, it appears the
9   witness is confused by your question.
10         Maybe you could rephrase it.
11  Q Okay. You explained, Miss Roe, that this is not
12  -- that Wells Fargo has or maintained deferred
13  compensation and you're saying that the LTICP may
14  have elements of a deferred compensation plan,
15  but, as far as you're concerned, it's not the
16  deferred compensation plan; is that correct?
17  A Yes.
18  Q Well, my question then is a follow-up. I mean,
19  as far as you're concerned or in your opinion, is
20  deferred compensation composed solely of monetary
21  benefits, money?
22  A Well, we're talking about compensation here.
23  Q But you know compensation can be in the form of
24  things other than money, isn't that right?
25         MS. FLINT: Answer the question if you

Paula S. Roe - 10/4/2007
In Re: Maria O. Segovia, debtor

Page 40

1   document, Exhibit 4. And I just wanted to turn
2   your attention to paragraph five and that's on
3   marked page 20. And, Mrs. Roe, if I can just
4   have you read paragraph five to yourself. I just
5   wanted to ask you some questions about it, about
6   its participation.
7   A   All right.
8   Q   Now, Ms. Row, I believe you earlier testified in
9   this deposition --
10           MS. FLINT: Counsel, could you just
11   wait till she's done a second, please?
12           MR. KONAMI: Sure.
13           THE WITNESS: Okay. Go ahead.
14   Q   Miss Roe, I believe you testified earlier in this
15   deposition that in your opinion that the LTICP
16   was for executives. I think you used that
17   description, that this was for executives.
18   A   Yes.
19   Q   Does executives also include highly compensated
20   individuals within the company?
21   A   Generally those would be synonymous.
22   Q   Also includes officers, top officers, top
23   executives, in that nature?
24   A   Yes.
25   Q   In your opinion, is the LTICP what the Internal

Case 3:13-cv-05053-LB   Document 12-4   Filed 11/26/13   Page 9 of 11
Case4:08-cv-03075-PJH   Document6-1   Filed09/23/08   Page92 of 128
Paula S. Roe - 10/4/2007
In Re: Maria O. Segovia, debtor

Page 41

1    Revenue code might refer to as a top-hat plan?
2    A  No.
3    Q  As far as your understanding then, it's not a
4       top-hat plan?
5    A  No.
6    Q  There's another creature under the Internal
7       Revenue code. They call them excess benefit
8       plans. I mean, to your knowledge or in your
9       opinion, is any award component in the LTICP in
10      the nature of an excess benefit plan?
11   A  No.
12   Q  And why do you say that?
13   A  It's not a benefit plan.
14   Q  And it certainly makes no reference to the
15      Internal Revenue code and its treatment of excess
16      benefits plan.
17   A  It's not an excess benefit plan.
18   Q  Okay. And, again, just to clarify, it's also not
19      a top-hat plan?
20   A  Correct.
21   Q  None of the awards would fall under top-hat plan
22      awards?
23   A  Correct.
24   Q  And why do you say this is not a top-hat plan?
25   A  Because it's not a benefit plan.

Paula S. Roe - 10/4/2007
In Re: Maria O. Segovia, debtor

Page 55

1   requirement for retirement, first of all, assume
2   the employee reach those retirement marks, under
3   the LTICP, what does that do in terms of the
4   stock options for the employee?
5   A  Nothing.
6   Q  Okay. Does it -- does it provide that they can
7   exercise the options up until the expiration date
8   rather than three months after the date they
9   leave employment?
10  A  Are you asking me when they become eligible to
11  retire, or are they retired?
12  Q  When they actually retire.
13  A  When they actually retire, if they meet that
14  criteria, they have until that expiration date to
15  exercise.
16  Q  Okay. When they actually retire and they've met
17  the criteria, does their stock options suddenly
18  become anything connected with ERISA?
19  A  No.
20  Q  Okay. Does their stock options, under that
21  circumstance, suddenly become any kind of a
22  retirement benefit?
23  A  No.
24  Q  Okay. Under those circumstances, do their stock
25  options suddenly become anything connected with

Benchmark Reporting Agency
612.338.3376

Paula S. Roe - 10/4/2007
In Re: Maria O. Segovia, debtor

Page 57

1         C E R T I F I C A T E
2
3      I, CHRISTINE M. CLARK, a Notary Public of
4   the State of Minnesota and Registered
5   Professional Reporter, do hereby certify that
6   prior to the commencement of the deposition
7            PAULA S. ROE
8   was duly sworn by me to testify the truth, the
9   whole truth and nothing but the truth.
10      I DO FURTHER CERTIFY that the foregoing is
11  a true and accurate transcript of the testimony
12  as taken stenographically by and before me at the
13  time, place and on the date hereinbefore set
14  forth.
15      I DO FURTHER CERTIFY that I am neither a
16  relative of nor employee nor attorney nor counsel
17  for any of the parties to this action and that I
18  am neither a relative nor employee of such
19  attorney or counsel, and that I am not
20  financially interested in the action.
21
22  ---------------------------------------
    CHRISTINE M. CLARK
23
24
25  DATE: 10/17/07

Benchmark Reporting Agency
612.338.3376