UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| KENNISON WAKEFIELD, et al., | No. C 13-05053 LB |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| WELLS FARGO & COMPANY, et al., | |
| Defendants. | [Re: ECF No. 67] |

## INTRODUCTION

In this putative class action, Plaintiffs Kennison Wakefield and William Stonhaus, who are financial advisors ("FAs") who left Wells Fargo to work for competing financial services firms, sued Wells Fargo on behalf of themselves and similarly-situated FAs who worked in California or North Dakota, alleging that Wells Fargo's forfeiture of their unvested deferred compensation violates California and North Dakota statutes that prohibit unlawful restraints of competition. (*See* Second Amended Complaint ("SAC"), ECF No. 44 at 18[1]; Cal. Bus. & Prof. Code § 16600; North Dakota Century Code § 9-08-06.) The parties settled their case, and now Plaintiffs move for preliminary approval of the proposed class action settlement. (*See* Motion, ECF No. 67.) Upon consideration of the papers submitted and the applicable law, the court grants the motion.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**STATEMENT**

**I.  THE LAWSUIT TO DATE**

Plaintiffs are former California and North Dakota FAs who allege that during their employment, they received awards under Wells Fargo[2] compensation plans, presently titled (1) Wells Fargo Advisors, LLC Performance Award Contribution Plan (Effective as of January 1, 2005) Amended and Restated as of January 1, 2012 and (2) Wells Fargo Advisors, LLC Performance Award Contribution and Deferral Plan (Effective as of January 1, 2005) Amended and Restated as of January 1, 2012 (the "Plans").  Plaintiffs allege that the Plans contain provisions that wrongfully forfeit Plan awards if an FA leaves employment to work for a competitor in the financial services industry.  Plaintiffs and the members of the putative class left Wells Fargo and went to work for competitors.  Plaintiffs allege that at the time of their terminations, these FAs were eligible for retirement treatment under the terms of the Plans, and this should have prevented forfeiture of their awards.  Plaintiffs allege that Wells Fargo nevertheless wrongfully forfeited their awards under the Plans' forfeiture-for-competition provisions in violation of the laws of California and North Dakota.

On September 26, 2013, Mr. Wakefield filed the original Complaint in Alameda County Superior Court.  (*See* Original Complaint, ECF No. 1-1; Wakefield Decl., ECF No. 50 ¶ 18.)  He alleged nine claims: (1) violation of California Business & Professions Code § 16600; (2) violation of California Civil Code § 52.1; (3) violation of California Labor Code § 206.5; (4) interference with prospective economic advantage; (5) book account; (6) constructive trust; (7) fraud; (8) breach of contract; and (9) conversion.  (*See* Original Complaint, ECF No. 1-1 ¶¶ 49-98.)  On October 17, 2013, he filed a First Amended Complaint that amended his first claim to include a violation of North Dakota Century Code § 9-08-06 in addition to the violation of California Business & Professions Code § 16600.  *See* First Amended Complaint ("FAC"), ECF No. 1-2 at ¶¶ 49-55.

On October 29, 2013, Wells Fargo removed the action to this court, asserting that Mr. Wakefield's claims are completely preempted by ERISA, 29 U.S.C. §§ 1001-1461, and that the

---

[2] The named defendants to this action are Wells Fargo & Company and its wholly owned subsidiaries Wells Fargo Advisor, LLC, and Wells Fargo Advisors Financial Network, LLC.  As it has throughout this action, the court refers to them collectively as "Wells Fargo."

court has federal question jurisdiction for this reason. (*See* Notice of Removal, ECF No. 1 at 2-4.) Mr. Wakefield moved to remand, arguing that the claims are not subject to ERISA preemption and therefore the court lacks federal question jurisdiction. (*See* Motion to Remand, ECF No. 12.)

By stipulation, the parties deferred proceeding on the motion to remand and engaged in settlement negotiations with a private mediator. On June 19, 2014, they notified the court that Mr. Wakefield would withdraw the motion because the parties had entered into a memorandum of understanding ("MOU") that conditionally settled the case except for the issue of whether the four-year statute of limitations for breach of contract claims bars recovery of the forfeited awards for putative class members who left Wells Fargo to work for competitors before September 26, 2009. (*See* 6/18/2014 Stipulation, ECF No. 37.) The parties agreed that Wells Fargo would file a summary judgment motion "concerning the statute of limitations and its applicability to a portion of the members of the putative class." (*Id.* at 2.) To queue up the motion, the MOU provided that Mr. Wakefield would submit by stipulation a second amended complaint to add a representative plaintiff who was a Wells Fargo FA with an award that allegedly was illegally forfeited before September 26, 2009 because the FA took a job with a competing firm. On July 11, 2104, and as the parties agreed in the MOU, Mr. Wakefield filed the operative Second Amended Complaint. (*See* SAC, ECF No. 44.) The Second Amended Complaint adds Mr. Stonhaus as a Plaintiff because he left Wells Fargo outside the four-year statute of limitations period but otherwise does not add or delete any claims. It also alleges that the court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (*Id.* ¶ 29.)

On July 22, 2014, Wells Fargo filed its motion for partial summary judgment, asking for judgment on "Plaintiff William Stonhaus's Eighth Claim for Relief for Breach of Contract." (*See* Motion, ECF No. 46; Proposed Order, ECF No. 46-14.) The court held a hearing on the matter on October 2, 2014. (*See* 10/2/2014 Minute Order, ECF No. 60.) On October 9, 2014, the court granted Wells Fargo's motion, ruling that Mr. Stonhaus's eighth claim for relief is time barred under California Civil Code § 3426.4 because Wells Fargo forfeited his deferred compensation before September 26, 2009. (*See* 10/9/2014 Order, ECF No. 63.)

With the statute of limitations issue resolved, Plaintiffs now have filed the instant motion for

preliminary approval of the proposed class action settlement. *See* Motion, ECF No. 67. The final settlement agreement (the "Agreement") is attached as Exhibit A to the Declaration of William I. Edlund. (*See* Edlund Decl., Ex. A, ECF No. 68-1.) Wells Fargo does not oppose the motion. (*See* Statement of Non-Opposition, ECF No. 69.) The court held a hearing on the matter on December 18, 2014. (*See* 12/18/2014, ECF No. 73.)

## II. THE PROPOSED SETTLEMENT

Under the Agreement, Wells Fargo will pay a total of $7,420,000 (the "Settlement Amount") into a common fund, to settle: (1) the claims of Settlement Class Members (i.e., members of the Class who do not opt out of the Settlement Class by filing opt-out forms and submitting a claim form) for the forfeited amounts; and (2) Class Counsel's claims for attorneys' fees and litigation expenses, up to $1,855,000 (subject to court approval). (*See* Agreement, ECF No. 68-1.) Additionally, Wells Fargo has agreed to pay the following additional amounts: (1) the fees and costs of claims administration, estimated to be $15,000; (2) the payment to the California Workforce Development Agency in connection with the release of claims under the California Private Attorneys General Act, in the amount of $7,500; and (3) Class Representatives' claims for plaintiff enhancements, estimated to be, but not to exceed, $10,000 per Class Representative (subject to court approval). (*See id.*)

California and North Dakota FAs who are still employed by Wells Fargo, as well as FAs who are employed by Wells Fargo in the future, will also benefit from this settlement, because Wells Fargo is committing by declaration that for FAs terminating from Wells Fargo since October 2012, it has not and will not forfeit any award of the Plans because an FA is or becomes employed or affiliated with a competitor of Wells Fargo, absent a change in California or North Dakota law permitting such enforcement. (Agreement, Ex. 2 (Paragraph 3 under the heading "The Terms of the Conditional Settlement").)

Class Counsel also will move the court for an award of attorney's fees and costs of up to $1,855,000, which is consistent with the Ninth Circuit's 25% benchmark on common fund litigation. (Agreement, ¶ 1.14); *see Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (benchmark fee award in common fund cases in the Ninth Circuit is 25% of the

1  fund). Wells Fargo will not oppose any request for attorney's fees and costs up to this amount.

2  (Agreement, ¶ 2.8.1.) In the event that the court (or appellate court) awards less than the maximum

3  attorney's fees and costs allowed under the Agreement, the unawarded remainder will revert to

4  Wells Fargo. (*Id.*)

5  Class Counsel are also entitled to apply to the court for enhanced awards for the Class

6  Representatives in the estimated amount (but not to exceed) of $10,000 each to compensate them for

7  the time they spent, and substantial risk they undertook, in bringing this litigation. (*Id.* at ¶ 2.8.2.)

8  **ANALYSIS**

9  **I. JURISDICTION**

10  This court has jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

11  **II. CONDITIONAL CERTIFICATION OF THE CLASS**

12  The parties propose conditional certification of a class that consists of "the collective group of all

13  persons formerly employed as Financial Advisors and/or in similar positions in California and North

14  Dakota by Wells Fargo Advisors, LLC, whose employment with Wells Fargo terminated during the

15  Class Period and (a) who, at the time of the termination of their employment, were (i) subject to the

16  Compensation Plans pertinent to the Litigation and (ii) qualified for retirement under those Plans,

17  such that otherwise unvested compensation amounts could continue to vest upon termination subject

18  to other restrictions; (b) who voluntarily left Wells Fargo or a predecessor corporation and either (i)

19  did not sign a valid release or transition agreement, (ii) did not sign a contract to not work for a

20  competitor in the financial services industry, or (iii) within three years after leaving Wells Fargo,

21  started work in the financial services industry with a competitor; and (c) whose unvested deferred

22  compensation account balances were deemed forfeited by Wells Fargo and not paid because they

23  either (i) did not sign a valid release or transition agreement, or (ii) within three years after leaving

24  Wells Fargo, started work in the financial services industry with a competitor." (Agreement, ¶ 1.2.)

25  "The parties understand and agree that the number of Class Members will consist of approximately

26  135 persons, and that the Class does not include three (3) Financial Advisors whom the parties agree

27  executed valid releases of the claims encompassed in this litigation." (*Id.*)

28  The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a)

and (b). In a settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial. *See Staton v. Boeing*, 327 F.3d 938, 952-53 (9th Cir. 2003) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same). The court finds that the proposed settlement class here meets the requirements of Federal Rule of Civil Procedure 23(a) and (b).

### A. Rule 23(a)

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable"; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. *See* Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

Here, the factors support class certification for purposes of settlement. First, there are likely to be approximately 135 class members, which makes joinder impracticable. *See Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, *County of L.A. v. Jordan*, 459 U.S. 810 (1982). Second, there exist common issues, including the following: (1) whether the Plans unlawfully forfeit Plan awards from a qualified FA if the FA works for a competitor after leaving Wells Fargo; (2) whether the forfeitures were a restraint on competition violating California Business and Professions Code § 16600 and North Dakota Century Code § 9-08-06; (3) whether Wells Fargo violated California Civil Code § 52.1 by economically coercing FAs and concealing its knowledge that Plan provisions were void, and forfeiting the awards; and (4) whether Wells Fargo's incorporation of the forfeiture provisions in the Plans violates California Labor Code §§ 206.5. Third, the typicality requirement is met because all Wells Fargo FAs, including Plaintiffs, have been and were subject to the provisions in the Plans and Wells Fargo's uniform policies, practices and alleged concealment about the Plans' forfeiture provisions. *See Hanlon*, 150 F.3d at 1019-20 (claims are typical if they are reasonably coextensive with that of absent class members; they need not be substantially identical). Fourth, the named Plaintiffs are able to fairly and adequately protect the interests of all class members. The factors relevant to a determination of adequacy are as

follows: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) counsel chosen by the representative parties who are qualified, experienced and able to vigorously conduct the proposed litigation. *Id.* at 1020. The court is satisfied that those factors exist here. The named Plaintiffs have shared claims and interests with the class. Also, Plaintiffs have retained qualified and competent counsel. (*See* Edlund Decl., ECF No. 68 at ¶¶ 2-4); *see also Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992).

**B.  Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022. The court finds that certification of the settlement class is appropriate under Rule 23(b)(3). Questions of law and fact common to class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). This case features multiple common questions of law and fact that are "a significant aspect of this case and they can be resolved for all members of the [C]lass in a single adjudication." *Hanlon*, 150 F.3d at 1022; *cf. Sullivan v. DB Invs.*, 667 F.3d 273, 303-04 & n.28 (3d Cir. 2011) ("In light of the Supreme Court's guidance that a district court '[c]onfronted with a request for settlement-only class certification' need not inquire whether the case 'would present intractable management problems,' *Amchem*, 521 U.S. at 620 . . . state law variations are largely 'irrelevant to certification of a settlement class.'").

**C.  Conclusion: Provisional Certification Is Appropriate**

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the court conditionally certifies the class set forth above for the purpose of giving the class notice of the proposed settlement in this matter and conducting a fairness hearing. The court has examined the propriety of certification only for settlement purposes. If the Effective Date as defined in the Agreement fails to occur, then the settlement class will be decertified and the findings and conclusions in this Part II of the Order will be deemed withdrawn.

## III. APPOINTMENT OF CLASS REPRESENTATIVES, CLASS COUNSEL, AND CLAIM ADMINISTRATOR

For the reasons set forth in the previous section, the court appoints Plaintiffs Kennison Wakefield and William Stonhaus as the Class Representatives. The court finds that they have claims that are typical of the claims of Class Members generally and that they are adequate representatives of the other members of the proposed Class. The court also finds that Bartko, Zankel, Bunzel & Miller ("Bartko Zankel") and Shumaker, Loop & Kendrick, LLP ("Shumaker") have sufficient qualifications, experience, and expertise in prosecuting class action cases and appoints those firms as co-lead Class Counsel for settlement purposes only.

The court designates, and approves, Rust Consulting to serve as Claim Administrator. It will administer the settlement, including, but not limited to, notice and related procedures, subject to the oversight of the parties and this court as described in the Agreement.

## IV. PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

The approval of a class action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms. In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary settlement is appropriate.

First, litigation poses risks, and an evaluation of the strengths and weaknesses of Plaintiffs' case

militates in favor of settlement.  While Plaintiffs believe they would prevail at trial and that Wells Fargo faces considerable exposure, Wells Fargo has raised several potential defenses, including the following: (1) all of Plaintiffs' claims fail as class claims due to arbitration provisions in the Plans; (2) some of the Class Members received forgivable loans or other remuneration from their new employers to compensate them for the forfeiture when they entered new employment, and therefore those Class Members either suffered no damages as a result of Wells Fargo's conduct or that their damages were mitigated; (3) the Class Members' claims under the Plans are preempted by ERISA and, therefore, that California and North Dakota law do not apply; (4) the Plans, which apply to Wells Fargo's FAs throughout the country, provide that the law of North Carolina governs their terms; (5) California Civil Code § 52.1 cannot apply to economic coercion; (6) Wells Fargo changed its practices in 2012 to suspend forfeitures of the Plan awards in California and North Dakota where working for a competitor is the basis for forfeiture, so Plaintiffs' claim for injunctive relief is moot; (7) Plaintiffs' interference allegations fail as a matter of law to meet the required elements and that individualized issues regarding those elements (such as establishing an existing relationship for each FA as well as interference with that relationship) would predominate and preclude class treatment of the interference claims; (8) even if FAs' Account Balances are considered book accounts, the four-year statute of limitations on a book-account claim began to run when each FA terminated his or her employment; (9) Plaintiffs cannot state a claim for fraud (or rely on statute of limitations defenses alleging fraudulent concealment) because, among other things, it made no misrepresentations, an alleged misrepresentation of law does not constitute fraud, and, should this case be litigated, the predominance of individualized issues would preclude class treatment; (10) Plaintiffs, who claim to be mere general creditors of Wells Fargo, cannot state a claim for conversion; and (11) requiring a release in exchange for compensation and/or benefits that would otherwise be forfeit pursuant to the terms of its Plans is lawful and enforceable.  (*See* Motion, ECF No. 67 at 12-18.)  The court finds that, given the risks posed by these possible defenses, the settlement is thus reasonable and within the range of possible approval.

 Second, the settlement appears to treat all Class Members fairly.  Here, the proposed settlement was the product of arm's-length, non-collusive negotiations, which had initially been mediated and

issues narrowed by a well-respected former judge. (*See* Edlund Decl., ECF No. 68 at ¶ 5.) In addition, Plaintiffs are represented by experienced and informed counsel. (*See id.* at ¶¶ 2-3.)

Third, the parties' settlement was keyed to the critical statute of limitations issue and was fully briefed and argued in Wells Fargo's motion for summary adjudication. The exhibits in that motion were over 1,000 pages with several lengthy declarations by Plaintiffs and other witnesses. (*See* ECF Nos. 47-55.) The parties and their counsel are familiar with the underlying facts and were sufficiently familiar with those facts and the legal issues to reach a settlement that was conditioned on the court's statute of limitations ruling.

Fourth, the proposed settlement also is substantively within the range of possible approval in light of Wells Fargo's several potential defenses described above. (*See* Edlund Decl., ECF No. 68 at ¶¶ 9, 17.) Despite these potential defenses, under the Agreement, the plaintiff FAs who left Wells Fargo during the period four years prior to the filing of the Original Complaint should receive over 100% of their forfeited Account Balances. (*Id.* at ¶ 15.) And even after the court's ruling on the statute of limitations, the FAs who left Wells Fargo during the period prior to September 26, 2009 and after 2005, will receive a total of $810,000 (with $10,000 for each FA). (*Id.*)

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily.

## V. APPROVAL OF CLASS NOTICE

The court approves the proposed notice (as amended by the parties via letter filed on December 10, 2014). (*See* Agreement, Ex. 2; 12/10/2014 Letter, ECF No. 71.) The professional claims administration firm of Rust Consulting, Inc. (the "Claims Administrator") will administer the settlement. (Agreement, ¶ 1.1.) Wells Fargo, through the Claims Administrator, will pay Settlement Class Members a sum not to exceed the Net Settlement Fund amount of $5,565,000 no later than 14 days following the date the Judgment becomes Final (as defined in the Agreement). (*Id.* at ¶¶ 1.14, 2.1.1 & 2.6.1.)

Each Class Member will receive a "Notice to Class Members Re Pendency of a Class Action and

Notice of Hearing on Proposed Settlement," and a Settlement Claim Certification Form ("Claim Form") (collectively, the "Class Documents") in the forms attached as Exhibit 2 to the Agreement. (*Id.* at ¶ 1.19.) The Claims Administrator will mail the Class Documents and perform other required claims administration services. (*Id.* at ¶¶ 2.4.1-2.4.8.) The Class Notice will describe the litigation, the terms of the settlement, each Class Member's settlement payment, and each Class Member's options with regard to the settlement. (*See id.*, Ex. 2.) The Class Notices will be sent via first-class mail, postage pre-paid, to the last known address of each Class member. (*Id.* at ¶ 2.4.1.) Before mailing the Class Notices, the Class Administrator will run the Class Members' last known addresses, as provided by Wells Fargo, through the U.S. Postal Service's National Change of Address Database and update the Class Database as appropriate. (*Id.* at ¶ 2.4.4.) If any of the Class Documents are returned to the Class Administrator as undeliverable, the Claims Administrator, shall undertake another Reasonable Address Verification Measure to ascertain the current address of the Class Member, and if a new address is obtained, re-mail the Class Documents. (*Id.* at ¶ 2.4.7.)

As explained in the Class Notice, Class Members who do not wish to be subject to the settlement may opt out of the settlement by submitting a letter to that effect. (*Id.* at ¶ 2.5.4.) Those Class Members who timely opt out will not receive a settlement payment, and will not be subject to the release of claims set forth in the Agreement. (*Id.* at ¶ 2.5.4; *see id.*, Ex. 2, § G.) All members of the Class who do not submit such a letter will become members of the "Settlement Class" and will be subject to the terms of the Agreement, including the release of claims. (*Id.* at ¶¶ 1.34, 2.5.4.) The Released Claims are defined in the Agreement as: "all claims, including without limitations 'Unknown Claims' as defined in Paragraph 1.32 hereof, demands, rights, liabilities and causes of action of every nature and description whatsoever including without limitation statutory, constitutional, contractual or common law claims, whether known or unknown, whether or not concealed or hidden, against the Wells Fargo Releasees, or any of them, for any type of relief relating to compensation and/or awards that were lost or deemed forfeited or did not vest, during the Class Period including without limitation, claims for alleged or actual (a) violations of California Business & Professions Code § 16600 and North Dakota Century Code § 9-08-06; (b) violations of California Civil Code § 52.1; (c) violations of California Labor Code § 206.5; (d) violations of the

California Private Attorney General Act, California Labor Code § 2698 et seq.; (e) any and all associated claims for interest, costs, or attorneys' fees, including without limitation claims under Code of Civil Procedure section 1021.5; and (f) to the extent not covered above, any and all claims pled in the Litigation." *Id.* ¶ 1.42. The Released Claims do not include claims not subject to Paragraph 1.42 of the Agreement.

Settlement Class Members may object to the Agreement by filing a written objection with the court. (*Id.* at ¶ 2.4.1; *see id.*, Ex. 2 (the third option presented under the heading "Rights and Options of Class Members").)

Settlement Class Members will receive their individual settlement payments (less withholding) only if they return their Claims Form. (*Id.* at ¶ 2.5.5.) Sums payable to Class Members who do not return their Claims Form will revert to Wells Fargo, subject to a seventy percent (70%) payment floor. (*Id.* at ¶ 2.11.9.)

## VI. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

On December 5, 2014, Plaintiffs filed a declaration showing compliance with CAFA, 28 U.S.C. § 1715. *See* Roe Decl., ECF No. 70. That declaration establishes that on November 21, 2014, Rust Consulting mailed notice of the Agreement to the Attorney General of the United States and the appropriate California state official. *See id.* Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

## VII. PROCEDURES FOR FINAL APPROVAL OF SETTLEMENT

The schedule for dates and deadlines is set forth in the table below and discussed in the sections that follow.

| Event | Date |
|---|---|
| Last Day for Class Notices to be distributed to Class members | January 20, 2015 |
| Deadline for return of Settlement Claim and and Exclusion Forms (60 days after the Class Notices are mailed) | March 17, 2015 |
| Deadline to file objections to settlement (60 days after the Class Notices are mailed) | March 17, 2015 |
| Deadline for Plaintiffs to file their motion for final approval of the settlement, and for awards of attorneys' fees, costs, and | April 20, 2015 |

plaintiff enhancements (35 days before the Fairness Hearing)

Fairness Hearing                                                      May 28, 2015, 9:30 a.m.

### A. Fairness Hearing

At the hearing, the court will determine whether to grant final certification of the Settlement Class, confirm the appointment of Bartko Zankel and Shumaker as co-lead Class Counsel and the named Plaintiffs as Class Representatives, finally approve the Agreement, and award the requested incentive awards to the Class Representatives and attorneys' fees and costs to Class Counsel. The court may, for good cause, extend any of the deadlines in this order or continue the fairness hearing without further notice to the Settlement Class Members.

### B. Initiation of Notice by No Later than 14 Days from Today

The court orders the parties (through the Claim Administrator) to send the notice in the form approved by this order by January 20, 2015.

Class Counsel must file proof of distribution of notice at or before the fairness hearing.

### C. Requests for Exclusion from the Settlement

Class Members may exclude themselves from the Class Settlement, and that request for exclusion must be made in the following manner: any member of the Settlement Class who wants to be excluded from the Settlement Class, and therefore not be bound by the terms of the Agreement, must submit a letter to that effect, by March 17, 2015, as discussed in Section V.

### D. Objections to the Settlement

Any Class Member who wishes to object to the settlement and/or to be heard at the fairness hearing must electronically file with or deliver to the Clerk of the Court a written notice of objection by March 17, 2015. Each such objection must include the following: (1) the name, address, and telephone number of the Settlement Class Member; (2) documents or testimony sufficient to establish membership in the Settlement Class; and (3) a detailed statement of any objection asserted, including the grounds therefor and reasons, if any, and for requesting the opportunity to appear and be heard at the fairness hearing. Failure to include the foregoing information will constitute grounds for striking an objection.

**E. Deadline for Submitting Motion for Final Approval and Petition for Attorney's Fees, Costs, and Expenses**

Plaintiffs must file a motion for final approval of the settlement and Agreement by April 20, 2015.  Pursuant to *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010), Class Counsel must file with this court their petition for an award of attorneys' fees and reimbursement of costs at the same time.  Both motions will be heard at the time of the fairness hearing.

**F. Plaintiffs' Claims Members' Release**

If, at the fairness hearing, this court grants final approval to the settlement and the Agreement, the named Plaintiffs and each individual Settlement Class Member who does not timely opt out will release claims, as set forth in the Agreement, by operation of this court's entry of the judgment and final approval.

**VIII. EFFECT OF THIS ORDER**

This Preliminary Approval Order will not be construed as an admission or concession by Wells Fargo of the truth of any allegations made by the Plaintiffs or of liability or fault of any kind.

In the event that the proposed settlement is not finally approved by the court, or in the event that the Agreement becomes null and void pursuant to its terms, this Preliminary Approval Order and all orders entered in connection herewith will become null and void, will be of no further force and effect, and will not be used or referred to for any purposes whatsoever in this action or in any other case or controversy.  In such an event, the Agreement and all negotiations and proceedings directly related thereto will be deemed to be without prejudice to the rights of any and all of the parties, who will be restored to their respective positions as of the date and time immediately preceding the execution of the Agreement.

**CONCLUSION**

For the foregoing reasons, the court **GRANTS** Plaintiffs' motion.

This disposes of ECF No. 67.

**IT IS SO ORDERED.**

Dated: December 18, 2014

_____
LAUREL BEELER
United States Magistrate Judge