1
2
3
4
5
6
7

**UNITED STATES  DISTRICT COURT**

**Northern District of California**

San Francisco Division

| | |
|---|---|
| KENNISON WAKEFIELD, et al., | No. 3:13-cv-05053 LB |
| Plaintiffs, | **AMENDED FINAL ORDER APPROVING CLASS SETTLEMENT, ATTORNEY'S FEES, COSTS, AND PLAINTIFF ENHANCEMENTS** |
| v. | |
| WELLS FARGO & COMPANY, et al., | |
| Defendants. | [Re: ECF No. 79, 82] |

**INTRODUCTION**

The parties agreed to settle all claims in this case. (Motion For Final Approval, ECF No. 82.[1])
The lawsuit charges violations of California and North Dakota law by Wells Fargo's forfeiture of
unvested deferred compensation for a class of financial advisers ("FAs") who left Wells Fargo to
work for competing financial services firms. (*See* Second Amended Complaint ("SAC"), ECF No.
44 at 18; Cal. Bus. & Prof. Code § 16600; North Dakota Century Code § 9-08-06.)  The court
previously granted the plaintiffs' unopposed motion for preliminary approval. (12/18/14 Order, ECF
No. 74.) Plaintiffs then moved for final approval of the settlement, attorney's fees, costs, and
plaintiff enhancements. (ECF Nos. 79, 82.) The court held a fairness hearing on May 28, 2015.
(5/28/15 Minute Order, ECF No. 89.) The court (1) finds the settlement fair, adequate, and
reasonable, (2) certifies a Rule 23(b)(3) class, and (3) approves the final settlement, including fees,

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations
are to the ECF-generated page numbers at the tops of documents.

UNITED STATES DISTRICT COURT
For the Northern District of California

1 | costs, and plaintiff enhancements.

2 | **STATEMENT**

3 | **I. THE LAWSUIT TO DATE**

4 | Plaintiff Kenneth Wakefield filed the original lawsuit on behalf of the putative class in Alameda

5 | County Superior Court on September 26, 2013, alleging that the forfeitures violated California law,

6 | and he filed an amended complaint on October 17, 2013, alleging that the forfeitures also violated

7 | North Dakota law. (Original Complaint, ECF No. 1-1; First Amended Complaint, ECF No. 1-2.)

8 | Wells Fargo removed the case to federal court, asserting that the Employee Retirement Income

9 | Security Act of 1974 ("ERISA") preempts all claims. (*See* Notice of Removal, ECF No. 1 at 2-4.)

10 | Mr. Wakefield moved to remand, arguing that the claims were not subject to ERISA preemption and

11 | that the court thus lacked federal question jurisdiction. (*See* Motion to Remand, ECF No. 12.)

12 | By stipulation, the parties deferred proceeding on the motion to remand and engaged in

13 | settlement negotiations with a private mediator. On June 19, 2014, they notified the court that Mr.

14 | Wakefield would withdraw the motion because the parties had entered into a memorandum of

15 | understanding that conditionally settled the case except for the issue of whether the four-year statute

16 | of limitations for breach of contract claims bars recovery of the forfeited awards for putative class

17 | members who left Wells Fargo to work for competitors before September 26, 2009. (*See* 6/18/2014

18 | Stipulation, ECF No. 37.) The parties agreed that Wells Fargo would file a summary judgment

19 | motion regarding how the statute of limitations applied to the class. (*Id.* at 2.) To facilitate a full

20 | consideration of the issue, the parties agreed by stipulation to an amended complaint to add a

21 | representative FA plaintiff (William Stonhaus), who had a forfeiture before September 26, 2009,

22 | outside the then-contested four-year statute of limitations. (*See* SAC, ECF No. 44.) The Second

23 | Amended Complaint also alleged jurisdiction under the Class Action Fairness Act ("CAFA"), 28

24 | U.S.C. § 1332(d). (*Id.* ¶ 29.)

25 | On July 22, 2014, Wells Fargo moved for summary judgment on Mr. Stonhaus's eighth claim

26 | alleging breach of contract. (*See* Motion, ECF No. 46; Proposed Order, ECF No. 46-14.) The court

27 | held a hearing on October 2, 2014 and granted the summary-judgment motion on October 9, 2015,

28 | on the ground that California Civil Code § 3426.4's four-year statute of limitations barred his claim

UNITED STATES DISTRICT COURT
For the Northern District of California

1  because Wells Fargo forfeited his deferred compensation before September 26, 2009. (*See* 10/9/2014

2  Order, ECF No. 63.)

3      Thereafter, following a hearing on December 18, 2014, the court approved the unopposed class-

4  action settlement preliminarily. (*See* Motion, ECF No. 67; 2/18/14 Order, ECF No. 74.) The final

5  settlement agreement (the "Agreement") is attached as Exhibit A to the Declaration of William I.

6  Edlund. (*See* Edlund Decl., Ex. A, ECF No. 68-1.)

7  **II.  THE SETTLEMENT**

8      The settlement's essential terms are as follows. Wells Fargo will pay a total of $7,420,000 (the

9  "Settlement Amount") into a common fund, to settle (1) the claims of Settlement Class Members

10  (members of the class who do not opt out of the Settlement Class by filing opt-out forms and

11  submitting a claim form) for the forfeited amounts, and (2) Class Counsel's claims for attorneys'

12  fees and litigation expenses, up to $1,855,000 (subject to court approval), broken down to

13  $1,795,000 in fees (slightly more than 24% of the fund) and $60,000 in expenses. (*See* Agreement,

14  ECF No. 68-1; Motion, ECF No. 82 at 9-11.) The attorney's fees award thus is consistent with the

15  Ninth Circuit's 25% benchmark on common fund litigation. (Agreement, ¶ 1.14); *see Six (6)*

16  *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (benchmark fee

17  award in common fund cases in the Ninth Circuit is 25% of the fund). Wells Fargo agreed not to

18  oppose any request for attorney's fees and costs up to this amount, but if the court does not approve

19  the amount, any excess will revert to Wells Fargo. (Agreement, ECF No. 68-1, ¶ 2.8.1.)

20      The result of the settlement is that class members who forfeited awards during the four years

21  from September 26, 2009 to September 13, 2013 and make valid claims will receive approximately

22  99% of their forfeited awards. Class members who forfeited their awards between 2005 and

23  September 25, 2009 and make valid claims will receive $10,000 each. The recoveries are not

24  reduced by attorney's fees, litigation expenses, class representative plaintiffs' enhancements, or

25  costs of claims administration. California and North Dakota FAs who are still employed by Wells

26  Fargo, and FAs employed by Wells Fargo in the future, also will benefit from this settlement

27  because Wells Fargo has committed that it has not and will not forfeit awards (for FAs terminating

28  from Wells Fargo after October 2012) for FAs who are or become employed or affiliated with a

1   competitor of Wells Fargo (unless a change in California or North Dakota law permits such

2   forfeiture). (Agreement, Ex. 2 (Paragraph 3 under the heading "The Terms of the Conditional

3   Settlement").)

4       The total class size initially was 135, but one individual who was not on the original list was

5   added to the list after he self-identified as a class member, so the revised class size is 136. (Lunde

6   Decl., ECF No. 81, ¶¶ 10-11; Lunde Supp. Decl., ECF No. 86, ¶ 3.) No class member objected.

7   (Lunde Decl., ECF No. 81, ¶¶ 16-17.) Ultimately, notice was made to the entire class. (*Id.* ¶¶ 10-13.)

8   (Nine class notices were returned undeliverable but the claims administrator conducted a further

9   investigation and ultimately, no notices were undeliverable.) The claims administrator received 131

10  claims forms, but two class members later opted out, which means that 129 class members made

11  claims; this is a total distribution of $5,118,805, which is 99% of the total distributable net

12  settlement amount. (*Id.* ¶ 15; Lunde Supp. Decl., ECF No. 86, ¶¶ 4-6.)  In all, three class members

13  opted out. (Lunde Supp. Decl., ECF No. 86, ¶ 6.)  That means the final number of class members is

14  133. (*Id.*) The settlement agreement provides for reversion to Wells Fargo of any uncashed checks.

15      Wells Fargo also agreed to pay the following amounts: (1) the fees and costs of claims

16  administration ($14,953); (2) the payment to the California Workforce Development Agency in

17  connection with the release of claims under the California Private Attorneys General Act, in the

18  amount of $7,500; and (3) enhanced awards to the class representatives Kennison Wakefield and

19  William Stonhaus of $10,000 each  (subject to court approval). (*See* Agreement, ¶ 1.14; Motion,

20  ECF No. 82 at 9-11; Lunde Supp. Dec., ECF No. 86, ¶ 8.)

21      The court previously appointed Messieurs Wakefield and Stonhaus as the class representatives,

22  finding that they had claims that are typical of the claims of class members generally and that they

23  are adequate representatives of the other members of the proposed Class. (12/18/14 Order, ECF No.

24  74 at 8.) The court also appointed Bartko, Zankel, Bunzel & Miller ("Bartko Zankel") and

25  Shumaker, Loop & Kendrick, LLP ("Shumaker") as co-lead class counsel, finding that they have

26  sufficient qualifications, experience, and expertise in prosecuting class action cases and appoints

27  those firms as co-lead Class Counsel for settlement purposes only. (*Id.*)

28

UNITED STATES DISTRICT COURT
For the Northern District of California

No. 3:13-cv-05053 LB
ORDER                                          4

UNITED STATES DISTRICT COURT
For the Northern District of California

**ANALYSIS**

**I. JURISDICTION**

This court has jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

**II. CLASS CERTIFICATION OF THE CLASS**

For the reasons and under the law set out in the preliminary-approval order, the court holds that the proposed settlement class meets the requirements of procedural rules 23(a) and 23(b)(3). The settlement class is hereby formed and consists of "the collective group of all persons formerly employed as Financial Advisors and/or in similar positions in California and North Dakota by Wells Fargo Advisors, LLC, whose employment with Wells Fargo terminated during the Class Period and (a) who, at the time of the termination of their employment, were (i) subject to the Compensation Plans pertinent to the Litigation and (ii) qualified for retirement under those Plans, such that otherwise unvested compensation amounts could continue to vest upon termination subject to other restrictions; (b) who voluntarily left Wells Fargo or a predecessor corporation and either (i) did not sign a valid release or transition agreement, (ii) did not sign a contract to not work for a competitor in the financial services industry, or (iii) within three years after leaving Wells Fargo, started work in the financial services industry with a competitor; and (c) whose unvested deferred compensation account balances were deemed forfeited by Wells Fargo and not paid because they either (i) did not sign a valid release or transition agreement, or (ii) within three years after leaving Wells Fargo, started work in the financial services industry with a competitor." (Agreement, ¶ 1.2.)

**III. NOTICE**

As described above, the claims administrator provided notice to all members of the class. Only one did not respond. The notice met all legal requisites.

**IV. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT**

The class-notice plan met the requirements of 28 U.S.C. § 1715. On November 21, 2014, the claims administrator provided the required notice to the appropriate state and federal officials and filed proof of compliance with section 1715. (Lunde Decl., ECF No. 81, ¶ 9.) This final approval thus follows the section 1715 service by more than 70 days. *See* 28 U.S.C. § 1715(d).

1   **V. FINAL APPROVAL OF SETTLEMENT**

2      Settlement is a strongly favored method for resolving disputes, particularly "where complex

3   class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.

4   1992); *see, e.g., In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995). A court may approve

5   a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and

6   adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal

7   or the best possible; it determines only whether the settlement is fair, free of collusion, and

8   consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*,

9   150 F.3d 1011, 1027 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to

10  assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense,

11  complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status

12  throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

13  stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government

14  participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation

15  omitted).

16     "Where a settlement is the product of arms-length negotiations conducted by capable and

17  experienced counsel, the court begins its analysis with a presumption that the settlement is fair and

18  reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22,

19  2010); *see, e.g., Rodriguez v. West Pub'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009)  ("We put a good

20  deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . .); *Nat'l*

21  *Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

22     The court finds the proposed settlement fair, adequate, and reasonable under the *Hanlon* factors.

23  The settlement itself is the product of non-collusive, arm's-length negotiations conducted by

24  experienced counsel with the help of a well-respected private mediator, the Hon. Ronald Sabraw

25  (Ret.). It provides full compensation to the plaintiffs with forfeited benefits on or after the beginning

26  of the class period on September 26, 2009. The critical issue affecting settlement was decided by the

27  undersigned in its summary-judgment order holding that the statute of limitations barred forfeitures

28  incurred before September 26, 2009. The parties settled the case before that decision, agreeing to a

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

No. 3:13-cv-05053 LB
ORDER                                                   6

1  high-low settlement contingent on a non-appealable order by the undersigned. And under the

2  settlement agreement, those members affected by the statute-of-limitations order receive $10,000

3  each. Moreover, as described above, Wells Fargo will not forfeit deferred compensation going

4  forward.

5      The undersigned is very familiar with the issues at play in this litigation. Considering the

6  strength of the plaintiffs' case, the risks, expense, complexity, and likely duration of further

7  litigation (including the risks of maintaining class-action status throughout the trial), and the

8  excellent recovery for class members, the court finds that all factors weigh in favor of approving the

9  settlement.

10  **VI. ATTORNEY'S FEES**

11      Class counsel requests an award of $1,795,000 in attorney's fees. (Settlement Agreement, ECF

12  No. 68-1, ¶ 1.14.)

13      Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the

14  court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

15  parties' agreement." Fee provisions included in proposed class-action settlements must be

16  "fundamentally fair, adequate and reasonable." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

17  935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the

18  amount of attorneys' fees. *Id.* at 943. The Ninth Circuit has instructed district courts to review class

19  fee awards with special rigor:

20      Because in common fund cases the relationship between plaintiffs and their attorneys turns
        adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees
21      from a common fund, the district court must assume the role of fiduciary for the class
        plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval,
22      even in the absence of objections, is improper.

23  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

24      In common-fund cases, the Ninth Circuit requires district courts to assess proposed fee awards

25  under either the "lodestar" method or the "percentage of the fund" method. *Fischel v. Equitable Life*

26  *Ass. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029. This court

27  finds that the fee request here is reasonable under both approaches.

28      Where the settlement involves a common fund, courts typically award attorney's fees based on a

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should

2   equal 25% of the settlement, although courts diverge from the benchmark based on a variety of

3   factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length

4   of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco,*

5   *Inc.*, 2013 WL 1222058, at \*2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F.

6   App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enters. Secs. Litig.*, 47 F.3d

7   373, 379 (9th Cir. 1995) (affirming fee award of 33% of the recovery); *State of Fla. v. Dunne*, 915

8   F.2d 542, 545 (9th Cir. 1990); *Six Mexican Workers*, 904 F.2d at 1311.

9       When determining the value of a settlement, courts consider both the monetary and non-

10  monetary benefits that the settlement confers. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74

11  (9th Cir. 2003); *Pokorny v. Quixtar, Inc.,* 2013 WL 3790896, \*1 (N.D. Cal. July 18, 2013), *appeal*

12  *dismissed* (Sept. 13, 2013) ("The court may properly consider the value of injunctive relief obtained

13  as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL

14  1120801, at \*7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash

15  distribution, the *cy pres* method of distribution, and the injunctive relief"), *appeal dismissed* (Dec.

16  19, 2013); *Hartless v. Clorox Co.,* 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x 716

17  (9th Cir. 2012).

18      Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

19  benefits being made available to class members rather than the actual amount that is ultimately

20  claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, \*23 (N.D. Cal. Mar. 28, 2007

21  (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court

22  abused its discretion in basing attorney fee award on actual distribution to class" instead of amount

23  being made available)).

24      The fees are reasonable under the percentage method, and the court finds additionally that it is

25  supported by a lodestar cross-check.

26      After applying the percentage method, courts typically roughly calculate the lodestar as a "cross-

27  check to assess the reasonableness of the percentage award." *See*, *e.g., Weeks v. Kellogg Co.,* 2013

28  WL 6531177, \*25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (Cal.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  1977); *Fed-Mart Corp. v. Pell Enterprises*, 111 Cal. App. 3d 215 (Cal. Ct. App. 1980); *Melnyk v.*

2  *Robledo*, 64 Cal. App. 3d 618, 624-25 (Cal. Ct. App. 1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224,

3  241 (Cal. Ct. App. 1970). "The lodestar . . . is produced by multiplying the number of hours

4  reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*,

5  82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000). Once the court has fixed the lodestar, it may increase

6  or decrease that amount by applying a positive or negative "multiplier to take into account a variety

7  of other factors, including the quality of the representation, the novelty and complexity of the issues,

8  the results obtained and the contingent risk presented." *Id.*

9       Based on the detailed declarations submitted by the plaintiffs' counsel, the court finds that

10  lodestar is approximately $2,171,222 as of April 30, 2015. (*See* Motion for Fees and Costs, ECF No.

11  79 at 22 (table of hours worked by timekeeper); Edlund Decl., ECF No. 78-1; Taaffe Decl., ECF No.

12  78-12; Edlund Supp. Decl., ECF No. 89, ¶ 8; Taaffe Supp. Decl., ECF No. 90. ¶ 8.) The plaintiffs'

13  attorneys have detailed their efforts to date, and, again, the court is familiar with the issues in the

14  litigation, including the significance of the statute of limitations defense. The rates counsel used are

15  appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-*

16  *Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical

17  rates, should be applied in order to compensate for the delay in payment . . . .") (citing *Missouri v.*

18  *Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d

19  1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one

20  of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of

21  litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

22       In sum, the court finds the fee request reasonable under both the "percentage of the fund"

23  approach and the lodestar cross-check. Wells Fargo does not oppose the award. (Non-Opposition,

24  ECF No. 80.)

25  **VII. EXPENSES**

26       The settlement agreement provides for payment of $60,000 in costs. (Settlement Agreement,

27  ECF No. 68-1, ¶ 1.14.) Class counsel are entitled to reimbursement of reasonable out-of-pocket

28  expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding

No. 3:13-cv-05053 LB
ORDER                                                    9

1  that attorneys may recover reasonable expenses that would typically be billed to paying clients in

2  non-contingency matters.); *Van Vranken*, 901 F. Supp. at 299 (approving reasonable costs in class

3  action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are

4  authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

5      Through April 30, 2015, class counsel incurred expenses of $61,309.18 and estimated additional

6  expenses of $1,500 for a total of $62,809.16.  (*See* Motion for Fees and Costs, ECF No. 79 at 24;

7  Edlund Decl., ECF No. 78-1, ¶¶ 19-20; Taaffe Decl., ECF No. 78-12, ¶ 22; Edlund Supp. Decl., ECF

8  No. 89, ¶ 9; Taaffe Supp. Decl., ECF No. 90. ¶ 9.). The costs will not reduce the amounts paid to

9  class members. The court finds that the submissions support the requested cost award of $60,000.

10  **VIII. INCENTIVE AWARDS**

11     The settlement awards the two named plaintiffs $10,000 each as an incentive award. District

12  courts must evaluate proposed incentive awards individually, using relevant factors that include,

13  "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

14  has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in

15  pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are

16  intended to compensate class representatives for work done on behalf of the class, to make up for

17  financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

18  willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-959.

19     The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has]

20  cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info.*

21  *Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975). The Ninth

22  Circuit has also emphasized that district courts "must be vigilant in scrutinizing all incentive awards

23  to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

24     The incentives proposed here are within the range of such awards that the Ninth Circuit has

25  either affirmed or cited with approval. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th

26  Cir. 2000) (approving $5,000 incentive to each named representative of potentially 5400-member

27  class in settlement of $1.725 million); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)

28  (approving $2,000 incentive award to five named plaintiffs; class numbered potentially more than 4

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  million; settlement value of $3 million) (cited in *Staton*).

2      The named plaintiffs merit this incentive. Their lawyer has explained the efforts they personally

3  made in pursuing this lawsuit by explaining Wells Fargo's compensation policies, ethics guidelines,

4  and conduct, and they also helped review documents, locate witnesses, and work with class counsel

5  on summary-judgment issues. (*See* Edlund Decl. ¶ 21; Taaffe Decl. ¶ 23.) They accepted the risk

6  that they might be liable personally for costs if Wells Fargo prevailed. (*Id.*) The proposed awards are

7  below awards in other relevant cases in the district. (*See* Motion for Fees and Costs, ECF No. 79 at

8  25). The court approves the incentive awards.

9  **CONCLUSION**

10      For the foregoing reasons, the court **GRANTS** Plaintiffs' motions and approves the settlement.

11  Wells Fargo, through the claims administrator, shall deliver the Notice of Final Approval to the

12  Class Members and make the payments to the participating claimants, class counsel, and the claims

13  administrator as provided in this order and the court's previous order dated December 18, 2014.

14  (ECF No. 70.)  The effective date of the settlement is 30 calendar days after the entry of judgment

15  (assuming there is no appeal filed).

16      This disposes of ECF No. 79 and 82.

17      **IT IS SO ORDERED.**

18  Dated: May 28, 2015

                              _____

19                                LAUREL BEELER
                              United States Magistrate Judge

20

21

22

23

24

25

26

27

28